No. 1096.   LANCE *v.* PLUMMER ET AL.   C. A. 5th Cir. Certiorari denied.   *Chester Bedell* and *Hamilton D. Upchurch* for petitioner.   *Jack Greenberg, Leroy D. Clark* and *Tobias Simon* for respondents.

MR. JUSTICE BLACK, dissenting from the denial of certiorari.

Now and then the Court refuses to review a case which raises issues of such great importance that I feel constrained to record my own belief that the case should be heard.   This is one of those cases.   The important issues in this case arose this way:

Upon petition of respondents a United States District Court in Florida granted an injunction which, among other things, ordered a number of certain named defendants not to "interfere with, molest, threaten, intimidate or coerce" Negroes who sought to use and did use public accommodations in St. Johns County.   The order for injunction also provided that its prohibitions would be applicable to and enforceable against "any other person to whom notice or knowledge of this Order may come." Petitioner Lance, a Florida deputy sheriff, duly appointed by the sheriff of St. Johns County, as authorized by state law, was not named in the complaint as one of the defendants against whom the injunction was directed. Shortly after the injunction was entered, however, an affidavit was filed in the District Court charging that Lance violated the court's order by following and threatening a Negro who had tried to register at a local motel. On the afternoon of Saturday, August 15, 1964, Lance was served with an order to show cause on the following Monday why he should not be punished for contempt. He did appear, the judge found that he had knowledge of the injunction, held him guilty of contempt, ordered him to pay a $200 fee to the plaintiff's lawyers, surrender his badge, resign his position as a Florida deputy sheriff

and "no longer act under any color, guise, or pretense as a law enforcement or peace officer." The Court of Appeals affirmed the judgment of contempt but modified the order so that Lance was prohibited from serving as a deputy sheriff only until some later date when he could satisfy the District Judge that he would in good faith comply with the terms of the order. 353 F. 2d 585.

Lance first contends that the District Judge exceeded his authority in attempting to make his injunction binding not only on the named defendants who were parties to the lawsuit but also on all persons who had notice of the order. This Court, speaking through Mr. Justice Brandeis, held in *Chase National Bank* v. *Norwalk,* 291 U. S. 431, that it was a violation of "established principles of equity jurisdiction and procedure" for a court to make its order apply to persons who were not parties but who merely had notice of the order. See also *Kean* v. *Hurley,* 179 F. 2d 888 (C. A. 8th Cir.). Likewise, Rule 65 (d), Fed. Rules Civ. Proc. would seem to bar such an order.* The summary contempt power of courts is a very limited one and the apparent conflict between what the court did here and what this Court in *Chase National Bank* said a district court could not do, is too important to liberty to leave this judgment standing without review.

The significance of this case, however, does not lie merely in the District Court's questionable assumption of jurisdiction to bind Lance by its injunction; but the manner in which the courts below exercised the power to punish for contempt also makes the case peculiarly

---

*The rule provides in part that all orders granting injunctions are "binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." There was no finding below that Lance was in any way an agent or was acting in concert with any of the defendants who were ordered not to intimidate or coerce Negroes.

appropriate for review here. The question of the punishment here is even more important because it is imposed not after a full trial with all the constitutional Bill of Rights' guarantees but after a summary contempt proceeding in which a single judge lays down the law, prosecutes those who disobey it, passes judgment on the alleged violations, and finally imposes punishment as he sees fit. See *Green* v. *United States,* 356 U. S. 165, 198 (dissenting opinion).

By ordering this state officer to surrender his badge and resign from his state office, the District Judge below assumed for the federal judiciary a new, unprecedented, and, I believe, highly dangerous power. To give federal judges such authority not only seems completely out of place in our federal form of government but also comes perilously close to violating the constitutional obligation of the Federal Government to guarantee to every State a republican form of government. Subjecting a state official's tenure of office to the discretion of the federal judiciary makes state officers responsible not to the people of the State but instead to federal judges who, according to the holding here, may oust them from their state office without even so much as a simple notice to the State whose officers they are. I cannot help but believe that the legislators who passed the Civil Rights Act of 1964 will be greatly surprised if not shocked to learn that by passage of that law they empowered federal judges to remove state officers without even giving these impeached officers a trial by jury. Federal courts have heretofore been reluctant to exercise equity powers to interfere with a State's governmental operations. See, *e. g., Douglas* v. *Jeannette,* 319 U. S. 157 (refusal to enjoin criminal prosecutions); *Walton* v. *House of Representatives,* 265 U. S. 487 (refusal to enjoin the removal of state official from office). No reason is given by the courts below for not respecting

the authority of a State to conduct its governmental operations by agents responsible to the people of the State. There is no suggestion that the traditional remedies for contempt are inadequate in this case. And no one claims that this new federal-judge power to remove state officers is necessary to enforce the salutary provisions of the Civil Rights Act of 1964. It is clear that the judge's order here provides complete protection to the plaintiff's rights without that part compelling the State's deputy sheriff to hold his job at the pleasure of United States judges.

I regret that the Court refuses to review this case in order to make it clear to all the people just how far this new contempt power of federal judges goes. Here it is only an appointed deputy sheriff that is removed from office, but if this new contempt enforcement power is legal I can think of no reason why it cannot be used against more important state officials whether elected or appointed. If federal judges can remove deputy sheriffs why not sheriffs, members of the state legislatures, state judges, and why not even state governors? In considering the importance of this power to remove state officers, it is highly relevant that this new power jeopardizes not merely officers in a few States, but threatens every state officer in every State from Florida to Alaska, from Maine to California and Hawaii. In order to protect the rights of citizens to vote in state elections this Court recently announced the constitutional principle of "one person, one vote." It seems a little early to graft onto that principle a new one giving United States judges the power to remove state officials chosen by the people in strict accordance with the "one person, one vote" principle.

Mr. Justice Harlan.

This is one of those rare instances in which I feel justified in noting my dissent to the action of the Court on a

petition for certiorari, not involving an adjudication on the merits. I fully share my Brother BLACK'S view that the issues in this case are important and that certiorari should be granted.