**William JOHNSON, Jr., Petitioner-Appellant,**

v.

**Dan V. McKASKLE, Acting Director, Texas Department of Corrections, et al., Respondents-Appellees.**

No. 82-2472.

United States Court of Appeals, Fifth Circuit.

March 23, 1984.

---

1. The third member of the panel hearing this case was Chief Judge JAMES P. COLEMAN who has since retired from the Court. Accordingly the instant case is decided by a majority of the panel.

Sanford Levinson, F. Scott McCown, University of Texas School of Law, Austin, Tex., for petitioner-appellant.

Adrian Young, Asst. Atty. Gen., Austin, Tex., for respondents-appellees.

Before CLARK, Chief Judge, POLITZ and JOHNSON, Circuit Judges.

CLARK, Chief Judge:

William Johnson, Jr., appeals the dismissal of his 42 U.S.C. § 1983 action alleging unconstitutional treatment by prison officials of the Texas Department of Corrections (TDC). Holding that res judicata barred Johnson's action, the district court dismissed with prejudice. We vacate and remand with directions.

I

Johnson, a paraplegic, asserted in his complaint that as an inmate in the TDC he was subjected to cruel and inhuman treatment in violation of the eighth amendment. Specifically, he alleged that because his wheelchair and a number of other personal items were taken from him, he was forced to crawl on the floor, which prevented him from reaching the wash basin to get drinking and bath water. Johnson's complaint, filed on February 26, 1981, sought injunctive, declaratory, and monetary relief.

The defendants, TDC prison officials, filed a motion to dismiss on the ground that Johnson, as a member of the plaintiff class in *Ruiz v. Estelle,* 503 F.Supp. 1265 (S.D. Tex.1980), *aff'd in part and vacated in part,* 679 F.2d 1115 (5th Cir.), *amended in part,* 688 F.2d 266 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983), had his claims litigated in that class action. After staying Johnson's action pending this court's final decision in *Ruiz,* the district court adopted the magistrate's recommendation and dismissed Johnson's suit.

The magistrate had concluded that res judicata barred Johnson from asserting equitable claims that were litigated by the *Ruiz* class, of which Johnson was a member. In addition the magistrate stated that because the damage claims asserted by the *Ruiz* class had been severed, Johnson's legal claims should be transferred to the *Ruiz* court. Despite this intent to save Johnson's right to pursue his claims, the magistrate recommended dismissal without specifying that it be without prejudice to permit Johnson to bring his legal claims before the *Ruiz* court. The district court adopted the magistrate's recommendation without change. Thus, because the order of the district court did not otherwise specify, the dismissal of Johnson's action is with prejudice and oper-

ates as an adjudication on the merits. Fed. R.Civ.P. 41(b).

Johnson argues, the defendants concede, and we hold that the district court erred in dismissing with prejudice Johnson's action. We vacate and remand with directions that the district court enter an order dismissing Johnson's action without prejudice.

Although Johnson's claims are similar to the wrongs asserted by the *Ruiz* class, they necessarily could not have been litigated as part of *Ruiz* since they occurred after the completion of that trial.[1] Assuming it applies to claims based on injunctive relief, the doctrine of res judicata would not "bar a suit based on acts of the defendant that have occurred subsequent to the final judgment asserted as a bar." *Blair v. City of Greenville,* 649 F.2d 365, 368 (5th Cir.1981). Thus, the district court erred in holding that Johnson's equitable claims were barred by res judicata.

## II

*Ruiz v. Estelle* was a class action initiated by prisoners to challenge the conditions of their confinement at the TDC. The litigation resulted in a comprehensive adjudication of the constitutional rights of the prisoners. As a result of *Ruiz,* the TDC presently operates under an injunctive decree, which is actively administered by a special master. As the district judge who presided over *Ruiz* stated:

> [T]he decree to be entered will include a comprehensive, detailed plan for the elimination of the unconstitutional conditions found to exist in the Texas prison system. Implementation of the plan will entail a long and complicated process, which must be carefully supervised and monitored.

The court does not have the resources necessary effectively to superintend the day-to-day details of the execution of the program to be set out in the decree. Hence, appointment of one or more special masters, who can devote full energies to that task, report findings, and make recommendations to the court, is imperative, if the comprehensive relief to which plaintiffs are entitled is to be achieved in an efficient and timely manner.

503 F.Supp. at 1389. The duties of the special master are to "observe, monitor, find facts, report or testify as to his findings, and make recommendations to the Court concerning steps which should be taken to achieve compliance." 679 F.2d at 1170 (reprinting amended order of reference). In addition, the special master's powers include unlimited access to records, files, and papers maintained by the TDC, but only to the extent this access relates to the special master's duties of monitoring compliance with the decree, and authority to order and to conduct hearings on the defendants' compliance with the decree. The special master was also authorized to appoint monitors to assist him. In carrying out the decree, the district court may call on magistrates for assistance. *Id.* at 1170–71. On appeal, this court affirmed in part and modified in part the district court's delineation of the special master's powers. This court ordered that the district court make clear that the authority of the special master and his monitors did not extend to hearing matters that should appropriately be the subject of separate judicial proceedings, such as actions under § 1983,[2] and that the reports, findings, and conclusions of the special master were to be accorded a

---

1. The acts allegedly committed against Johnson occurred in 1980 and 1981. The *Ruiz* trial ended on September 20, 1979.

2. Our mandate provided the following additional detail in this regard:

   The order of reference does not make clear that, in conducting investigations and hearings, the special master and the monitors are not to consider matters that go beyond superintending compliance with the district court's decree. Such an express constraint is appro-

priate because of the danger that the special master or the monitors may entertain inmate complaints that convert the remedial process into a surrogate forum for new § 1983 actions. In the interests both of prison administration and sound judicial procedure, it should be made clear to the plaintiffs, the special master, the monitors, and the TDC staff that the special master is not an inmate advocate or a roving federal district court. 679 F.2d at 1165.

presumption of correctness and reviewed under the "clearly erroneous" rule only when based on hearings conducted on the record after proper notice. *Id.* at 1165.

### III

The case we decide today presents a procedural issue that is presented by many similar cases. That issue is how United States district courts in Texas will handle lawsuits that are filed by TDC prisoners, who comprise the *Ruiz* class, and that assert legal or equitable claims directly related to or dependent upon rights adjudicated and incorporated in the *Ruiz* injunctive decree. Such suits by prisoners should be transferred to the district court that fashioned the *Ruiz* injunctive decree. The ongoing injunctive decree of the *Ruiz* court is a forward looking order that regulated the daily affairs of the TDC during the period of Johnson's complaint and continues such regulation today.

The *Ruiz* court is the court that should adjudicate Johnson's equitable claims that actions by TDC officials have violated the *Ruiz* decree. Since Johnson's damage allegations are based on the same actions, they implicate the same decretal values. Therefore, the *Ruiz* decree is at least presumptively involved with legal claims that are based on administrative and operative practices of the TDC covered by the *Ruiz* injunction. Only by requiring that such prisoner claims for constitutional deprivation be filtered through the *Ruiz* court, can courts ensure a minimal, consistent degree of federal intervention in the affairs of the TDC, even-handed, effective relief for TDC inmates, and the orderly administration of an injunctive decree by the court that authored and is administering it.

Upon receipt of the transferred proceeding, the *Ruiz* court can examine Johnson's claims in the context of its decree. Basically, that court may find (1) that the claims are within the scope of the injunctive decree but do not violate it, (2) that the claims are contrary to the decree, or (3) that the claims are not covered by the decree. Being able to see prisoner litigation that implicates the terms of its decree may also indicate to the *Ruiz* court that its decree should be modified to be more or less inclusive. Depending on its appraisal of how Johnson's claims are affected by or affect its decree, the *Ruiz* court can choose to (a) retain and adjudicate the equitable rights asserted so that their adjudication will be consistent with the injunctive decree and the ongoing administration of that order, (b) retain and adjudicate the legal rights asserted if they are based on the terms of the injunctive decree and should be decided as part of any claims for equitable relief that the court adjudicates,[3] (c) issue a show cause order for criminal or civil contempt and, if appropriate, impose punishment or award compensatory damages or other civil relief, or (d) return the action to the court from which it was transferred if it determines that its decree is not implicated and an independent adjudication in the separate § 1983 proceeding is more appropriate.[4] Although most prisoner claims will be disposed of by one of these methods, this listing is not intended to limit the options available to the *Ruiz* court when confronted with circumstances of an unusual case.

### IV

We vacate the order of the district court dismissing with prejudice and remand with directions that Johnson's claims be transfer-

---

**3.** In accordance with our prior mandate, any adjudication of § 1983 claims must be by the court or magistrate and not by the special master or monitors.

**4.** In *Alexander v. Ware,* 714 F.2d 416 (5th Cir. 1983), a prisoner at the TDC filed a § 1983 action challenging the use of summary disciplinary procedures to deprive him of good time credit. Seeking damages and declaratory relief, he alleged in his complaint that TDC offi-

cials also violated the *Ruiz* decree. Noting that if Alexander's allegations were true the TDC had violated several aspects of the *Ruiz* decree, this court stated: "[T]he district court should consider whether Alexander's complaint, in order to effectuate the *Ruiz* decree, is more efficiently processed as a petition either for further relief or for a contempt citation before the *Ruiz* court." *Id.* at 420. Our holding here is not inconsistent with *Alexander.*

red to the *Ruiz* court for further proceedings not inconsistent with this opinion.

**VACATED and REMANDED.**