768 F.2d 639
 Jonathan SAVIDGE, by his parents and next friends, Wilbur
SAVIDGE and Felicia Savidge, et al.,
Plaintiffs-Appellants, Cross-Appellees,
v.
Jaylor FINCANNON, Superintendent, Fort Worth State School,
et al., Defendants-Appellees, Cross-Appellants.
 No. 84-1753.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 15, 1985.
 
 David Ferleger, Philadelphia, Pa., and G. Stanley Cramb, Bedford, Tex., for plaintiffs-appellants, cross-appellees.
 Jim Mattox, Atty. Gen., Austin, Tex., and Fred Weldon, Asst. Atty. Gen., Dallas, Tex., for defendants-appellees, cross-appellants.
 Appeals from the United States District Court for the Northern District of Texas.
 Before RANDALL, DAVIS, and HILL, Circuit Judges.
 W. EUGENE DAVIS, Circuit Judge:
 
 
 1
 This curious appeal presents us with a question of judicial housekeeping on which the parties profess to have no strong feelings. Before that question can be intelligibly posed, however, a recounting of the factual and procedural background of this case is necessary.
 
 
 2
 In June 1980, Jonathan Savidge was admitted to the Fort Worth State School, a facility administered by the Texas Department of Mental Health & Mental Retardation (MHMR). During his residence at the Fort Worth school Jonathan became extremely ill, eventually requiring hospitalization and surgery. At present, Jonathan suffers from mild scoliosis and partial paralysis. In January 1983, Jonathan's parents filed this federal civil rights action in the district court for the Northern District of Texas alleging that Jonathan's past and current illnesses were caused by conditions at the Fort Worth State School. They alleged specifically that inadequate medical treatment, inadequate and unsanitary living conditions, and an inadequate habilitative program caused Jonathan's illnesses, and sought damages, declaratory relief and attorney's fees.
 
 
 3
 At the same time, Lelsz v. Kavanagh, No. 5-74-95-CA, was pending in the Eastern District of Texas. Lelsz is a class action originally filed in 1974 to seek injunctive relief from allegedly unconstitutional conditions at three schools administered by MHMR, including the Fort Worth State School. In August 1981, the district court for the Eastern District certified a plaintiff class in Lelsz, of which Jonathan Savidge was and is a member. In July 1983, the district court approved a settlement in Lelsz providing mandatory injunctive relief to the plaintiff class. This relief included, in broad outline: Habilitation suited to the individual class member's needs; accessible, quality medical services; least restrictive alternative living arrangements; and appropriate precautions to provide clean, safe living conditions for class members. The settlement further provides that the state will develop certain standards for use in its facilities and programs in the future.
 
 
 4
 Six weeks after the Lelsz settlement was approved, the Savidges amended their petition in this case, still pending in the Northern District of Texas, to add claims for injunctive relief based at least in part on the Lelsz settlement. In December 1983, these claims for injunctive relief were severed from the original claims for damages and declaratory relief. A trial on the injunctive claims was held in February 1984.
 
 
 5
 At this point, the orderly progression of the case toward resolution went somewhat awry. Approximately a month after the trial on the injunctive claims, but before the district court ruled on those claims, this court handed down Johnson v. McKaskle, 727 F.2d 498 (5th Cir.1984). In brief, Johnson involved the civil rights claims of a Texas prison inmate and member of the plaintiff class in Ruiz v. Estelle, 503 F.Supp. 1265 (S.D.Tex.1980) aff'd in part and vacated in part, 679 F.2d 1115 (5th Cir.), amended in part, 688 F.2d 266 (5th Cir.1982), cert. denied, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983), a class action suit seeking reforms in the Texas Department of Corrections system. At the time of Johnson's suit, the Texas Department of Corrections was operating subject to a comprehensive injunctive decree entered in Ruiz. The issue presented by Johnson's case was "how United States District Courts in Texas will handle lawsuits that are filed by TDC prisoners, who comprise the Ruiz class, and that assert legal or equitable claims directly related to or dependent upon rights adjudicated and incorporated in the Ruiz injunctive decree." 727 F.2d at 501. We held that, for reasons to be set forth more fully below, any such suits by prisoners should be transferred to the district court administering the Ruiz case.
 
 
 6
 The district court for the Northern District, on learning of Johnson, sua sponte transferred this suit to the Eastern District of Texas, the court in which the Lelsz class action was then pending. The district court in the Eastern District, however, rejected transfer and ordered the case returned to the Northern District pursuant to 28 U.S.C. Sec. 1404(a).[1] The Eastern District expressed the opinion that Johnson v. McKaskle had no relevance to this case, and in addition noted that its crowded docket would result in a much greater delay in resolution than if the Northern District, which had already heard the case, went on to decide it. Back in the Northern District, the district court, again sua sponte, dismissed the entire case, both damage and injunctive relief claims, without prejudice to the Savidge's right to refile in the Eastern District. This appeal is taken from the dismissal without prejudice. The Savidges have now refiled in the Eastern District of Texas, but that district court stayed those proceedings pending the outcome of this appeal.
 
 
 7
 Thus, the question this appeal presents is that which was presented by Johnson v. McKaskle, translated to a different factual setting: How are the United States district courts in Texas to handle lawsuits filed by individuals who comprise the Lelsz class, which assert legal or equitable claims directly related to or dependent upon rights adjudicated and incorporated in the Lelsz injunctive decree?[2] We conclude that the same considerations which informed the decision in Johnson are present in this case, and dictate that the court administering the injunctive decree in the class suit should also, at least initially, handle apparently related claims.
 
 We stated in Johnson:
 
 8
 The ongoing injunctive decree of the Ruiz court is a forward looking order that regulated the daily affairs of the TDC during the period of Johnson's complaint and continues such regulation today.
 
 
 9
 The Ruiz court is the court that should adjudicate Johnson's equitable claims that actions by TDC official have violated the Ruiz decree. Since Johnson's damage allegations are based on the same actions, they implicate the same decretal values. Therefore, the Ruiz decree is at least presumptively involved with legal claims that are based on administrative and operative practices of the TDC covered by the Ruiz injunction. Only by requiring that such prisoner claims for constitutional deprivation be filtered through the Ruiz court, can courts insure a minimal, consistent degree of federal intervention in the affairs of the TDC, even-handed effective relief for TDC inmates, and the orderly administration of an injunctive decree by the court that authored and is administering it.
 
 
 10
 727 F.2d at 501. Here, as in Johnson, an ongoing injunctive decree regulates a significant portion of the affairs of the MHMR. The aspects of MHMR's operations of which this case complains are those which are the subject of the Lelsz decree. Savidge's injunctive claims are in fact predicated, at least in part, on the settlement agreement and injunctive decree in Lelsz. Only one distinction between this case and Johnson is apparent--in Johnson, the inmate's claims were based entirely on actions taking place after the class injunctive relief had gone into effect, here Savidge's damage claims are based in large part on actions taking place prior to that point.
 
 
 11
 At least in this case, this distinction is not significant. Savidge's claims are, in any case, based in part on actions occurring after the Lelsz decree, and the complained of actions occurring prior to the Lelsz decree are of the same type and raise the same issues as those which directly implicate the Lelsz decree. All of these claims should therefore be considered initially by the Eastern District in light of the Lelsz decree.
 
 
 12
 It may well be that the Northern District is the appropriate forum for some or all of Savidge's claims. As in Johnson, after the district court administering the Lelsz case has evaluated an individual claim in context of that decree it may opt to adjudicate the claim and award what relief, if any, is required, return the case to the district court from which it was transferred if the Lelsz decree is not implicated and separate adjudication will be more appropriate, or take such other action as may be necessary in circumstances of an individual case.[3] See 727 F.2d at 501. The order of the district court dismissing the suit without prejudice is therefore VACATED and the case is REMANDED with directions that the proceeding be transferred to the Eastern District of Texas for further proceedings consistent with this opinion.
 
 
 13
 VACATED and REMANDED.
 
 
 
 [1]
 "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. Sec. 1404(a)
 
 
 [2]
 The State argues in a cross-appeal that Savidge's claim should have been dismissed with prejudice for the following reasons:
 (1) Savidge's claims are barred by the eleventh amendment;
 (2) Savidge has failed to state a federal claim under the requirements of Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed. [2d] 28 (1982); and
 (3) Since Savidge's equitable claims might have been raised in the Lelsz action, the decree in Lelsz is res judicata to those claims.
 These issues were raised in a summary judgment motion filed by the State, but since the district court dismissed the case on the strength of Johnson v. McKaskle, they were never actually litigated. Each of these issues requires additional development and findings of fact properly carried out in the district court. We therefore do not address the merits of the cross-appeal.
 
 
 [3]
 We were informed at oral argument that an order recently entered in the Lelsz action may moot Jonathan's claims for injunctive relief. As of the date of this opinion we have received no further communication concerning whether Jonathan is affected by this order. We therefore leave it to the district court to determine its effect. We also note that the Savidges now have two suits pending, this action and the action, now stayed, filed in the Eastern District. On remand, the district court will of course have the discretion to consolidate the suits or take other appropriate action