Isiah Carl GREEN, Plaintiff-Appellant,

v.

Dan V. McKASKLE, Acting Director,
Texas Department of Corrections, et
al., Defendants-Appellees.

No. 84–2172.

United States Court of Appeals,
Fifth Circuit.

Aug. 26, 1985.

Charles Dewey Cole, Jr., New York City,
for plaintiff-appellant.

Jim Mattox, Atty. Gen., Adrian L.
Young, Asst. Atty. Gen., Austin, Tex., for
defendants-appellees.

Before GOLDBERG, REAVLEY and
GARWOOD, Circuit Judges.

REAVLEY, Circuit Judge:

Plaintiff Isiah Carl Green is a paraplegic
who seeks to recover damages and obtain
injunctive and declaratory relief because of
the conditions of his confinement by the
Texas Department of Corrections (TDC).
The district judge, of the Southern District
of Texas and not the judge presiding over
the ongoing class action suit related to the
Texas prisons, rendered judgment against
Green. The holding was, in part, that the
equitable claims arising after the 1979 trial
of the class action suit could not be main-
tained by a member of the class through
the individual's lawsuit. Because that is
contrary to the decision of this court in
*Johnson v. McKaskle*, 727 F.2d 498 (5th
Cir.1984), the judgment of the district court
will be reversed and the case remanded,
with directions that it be referred to the
court wherein the class action stands.

This panel writes further to suggest en
banc review of the holding of *Johnson v.
McKaskle* that equitable claims germane to
those made in the class action may be
maintained individually by a class member,
and we further suggest Judicial Council
consideration of the administration of com-
plaints by class members that implicate the
decrees in the class action.

## I.

█ Our plaintiff Green filed complaints in October of 1978, and in June of 1979, which he amended and supplemented from time to time and as late as April of 1982, complaining of many details of his treatment by prison officers that began at the Huntsville unit in July of 1978 and continued to his confinement at the Wynne unit in 1981. Green sought injunctive and declaratory orders with respect to many aspects of the confinement and treatment of paraplegics, dealing with access to the law library, attendance upon religious services, administrative segregation, cell and shower facilities, medical assistance and treatment, and others. He also sought damages to compensate for some of his personal grievances. The suits were ultimately consolidated and dismissed by the district court.

The district court, following the magistrate's recommendations, dismissed the claims for equitable relief on the grounds that they were barred by res judicata. The reasoning was that Green was a member of the class certified by the court in *Ruiz v. Estelle*, 503 F.Supp. 1265 (S.D.Tex.1980), *aff'd in part and rev'd in part*, 679 F.2d 1115, *opinion amended in part and vacated in part*, 688 F.2d 266 (5th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983), and that Green's claims for injunctive relief were the same as those presented in *Ruiz*. In deciding that the legal claims could be resolved by summary judgment, the magistrate considered whether those claims "should be sent to [the *Ruiz*] court ... for a determination of damages that arose out of conditions found unconstitutional in *Ruiz*," but decided against doing so because "it would be administratively burdensome, if not overwhelming, for the *Ruiz* court to try all damage claims based upon allegations decided in *Ruiz*."

Ten days after the judgment in the Green case, this court's opinion in *Johnson v. McKaskle* was delivered. In many respects the facts in the *Johnson* case were similar to those here, and there it was held that equitable claims arising after the *Ruiz*

trial (which was concluded on September 20, 1979) and before the *Ruiz* court decrees (one was dated March 3, 1981, another dated May 1, 1981, and there were a number of opinions and other orders) were maintainable as individual lawsuits apart from the class action. The *Johnson* decision directed the district court to transfer the equitable and legal claims to the *Ruiz* court.

The disposition of Green's equitable claims was based entirely on the holding that Green was adequately represented in the *Ruiz* class action and would not be permitted to litigate similar equitable claims in his own lawsuit. Because that holding is contrary to *Johnson*, we are compelled to reverse the judgment of the district court. And we follow the lead of the *Johnson* decision in directing that Green's equitable and legal claims be referred to the district court that fashioned the *Ruiz* injunctive decree.

## II.

This panel is of the opinion that equitable claims by members of the *Ruiz* class, which are comparable to those claims litigated and under ongoing review and supervision of the court in the *Ruiz* class action, should not be maintainable as individual causes of action. The *Ruiz* class action suit is one of massive proportions. *See Ruiz v. Estelle*, 679 F.2d at 1127. The decrees of the court in that class action are directed at almost every facet of the facilities and the treatment of prisoners in the prisons of Texas. The class is composed of all past, present, and future inmates. A detailed section of a *Ruiz* decision was addressed to "Special Needs Inmates" and included a thorough evaluation of conditions in the Texas prisons as they relate to the physically handicapped wheelchair-bound inmate. 503 F.Supp. at 1340–43. Several paraplegic inmates testified before the court regarding their conditions of confinement.

█ Individual members of a class may, of course, seek to intervene in the class action and may contend for intervention, or

object to the binding effect of a class action judgment, on the ground that they are not or were not adequately represented in the class action. But the individual class member should be barred from pursuing his own individual lawsuit that seeks equitable relief within the subject matter of the class action. *See Kemp v. Birmingham News Co.,* 608 F.2d 1049 (5th Cir.1979); *Fowler v. Birmingham News Co.,* 608 F.2d 1055 (5th Cir.1979); *Cotton v. Hutto,* 577 F.2d 453 (8th Cir.1978); *Wren v. Smith,* 410 F.2d 390 (5th Cir.1969); *see generally* 7A C. Wright & A. Miller, Federal Practice and Procedure § 1789 (1972 & Supp.1985).

What is said here applies to equitable claims arising today as well as those arising before a *Ruiz* decree. The *Ruiz* court has expressly ordered that the plaintiff class may seek additional equitable relief by way of new or future claims. It is true today, as stated then by the *Johnson* court:

The ongoing injunctive decree of the *Ruiz* court is a forward looking order that regulated the daily affairs of the TDC during the period of Johnson's complaint and continues such regulation today.

727 F.2d at 501.

We would, of course, not prevent a member of the class from going to the class attorney, or to the court's special master, to urge consideration of motions to the *Ruiz* court for additional equitable relief or sanctions against any party violating its injunctions. *See Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Leman v. Krentler-Arnold Hinge Last Co.,* 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389 (1932); *Lance v. Plummer,* 353 F.2d 585 (5th Cir.1965), *cert. denied,* 384 U.S. 929, 86 S.Ct. 1380, 16 L.Ed.2d 532 (1966).

We suggest en banc consideration.

### III.

In *Johnson* this court set up a method of administration of all Texas prisoner civil rights suits that could implicate the *Ruiz* court decrees. We directed that all equitable claims occurring after the trial in the *Ruiz* case, all equitable claims that actions by TDC officials have violated the *Ruiz* decrees, and all legal claims based on administrative and operative practices of the TDC covered by the *Ruiz* injunction should be "filtered through the *Ruiz* court." 727 F.2d at 501. The *Ruiz* court was to review each of these lawsuits and decide whether to

(a) retain and adjudicate the equitable rights asserted so that their adjudication will be consistent with the injunctive decree and the ongoing administration of that order, (b) retain and adjudicate the legal rights asserted if they are based on the terms of the injunctive decree and should be decided as part of any claims for equitable relief that the court adjudicates, (c) issue a show cause order for criminal or civil contempt and, if appropriate, impose punishment or award compensatory damages or other civil relief, or (d) return the action to the court from which it was transferred if it determines that its decree is not implicated and an independent adjudication in the separate § 1983 proceeding is more appropriate.

727 F.2d at 501 (footnotes omitted).

The *Ruiz* class action case is pending in the Southern District of Texas. Following our *Johnson* opinion, the Chief Judge of the Southern District of Texas by his general order Number 9 designated the Honorable William Wayne Justice, Chief Judge of the United States District Court for the Eastern District of Texas, to continue to sit in the Southern District as the *"Ruiz* court." In that capacity Judge Justice is to examine all section 1983 actions filed in the Southern District to determine if they "assert legal or equitable claims directly related to or dependent upon rights adjudicated and incorporated in the *Ruiz* injunctive decree." 727 F.2d at 501. And Judge Justice is then to follow the directions of this court in *Johnson.*

Chief Judge Justice has thus been charged with responsibility for the oversight of these *Ruiz* related cases as well as the management of the conduct of the class action itself. Nor do we forget that he has a very heavy docket of his own in the

Eastern District to go with his administrative duties as chief judge. He has not, however, neglected the *Ruiz* related lawsuits. Temporary staff have been employed, and the magistrates of both the Southern and Eastern Districts have been occupied in addressing those cases. Judge Justice in his memorandum opinion of July 26, 1984 (amended August 8, 1984) initially set out his procedure to comply with the *Johnson* decision. He determined that compensation through civil contempt proceedings would be available for individuals complaining of *Ruiz* violations that arise after the May 1, 1981 injunctive decree. And he decided that *Ruiz* law would apply retroactively to support liability for damages under section 1983. *Ruiz* law is deemed to include the provisions of the *Ruiz* injunction of May 1, 1981, as well as the stipulations and consent plans filed subsequently. To the extent a claimant seeks a punitive contempt order or classwide equitable relief, the claim is dismissed without prejudice, with instructions that copies of the pleadings are to be forwarded to the attorney for the *Ruiz* class as well as to the special master.

We are not aware of anything the *Ruiz* court is doing relative to individual equitable claims arising prior to the 1981 decree except insofar as his orders declare that *Ruiz* law shall apply to damages relief sought by that claimant. Nor do we see any sign that the *Ruiz* court is considering additional equitable relief for Texas prisoners not at the behest of the *Ruiz* class.

Law clerks, working under the direction of Judge Justice, are examining the civil rights complaints filed in the clerks' offices of these two districts. As of this date they have reviewed 843 individual cases. In 634 of these cases orders have been entered by which magistrates are directed to conduct hearings where the prisoner is asked to elect between proceeding in the *Ruiz* court for civil contempt compensation or pursuing legal relief by full trial in a non-*Ruiz* court. We are told that there have been 102 separate election hearings conducted by the magistrates in the Eastern District. Of these, 30 petitioners have elected to seek civil contempt compensation, 34 have elected to proceed in the other courts for damages, and the balance have not yet made their decisions.

The size of this undertaking and the poor prospects for timely disposition of these cases lead this panel to believe that prompt changes are required. The Judicial Council now has before it a request for the extension of employment of two staff attorneys and one secretary who are working on these *Ruiz* related cases. Congress has directed that "[e]ach Judicial Council shall make all necessary and appropriate orders for the effective and expeditious administration of justice within its circuit." 28 U.S.C. § 332(d)(1) (1982). This panel believes that we have an occasion here when the oversight of the Council should be exercised.

## IV.

The judgment in the present case is reversed and the case is remanded to that court with the directions that it be referred to the *Ruiz* court for further proceedings.

REVERSED and REMANDED.

GARWOOD, Circuit Judge, specially concurring:

I concur in the judgment and join in the Court's opinion subject only to the following. Though I am in agreement with what is said in part II as applied to appellant, I might have some reservations about future inmates. I do fully agree, however, with the suggestion for en banc consideration.