**FEDERAL SAVINGS & LOAN INSURANCE CORPORATION as Receiver for Empire Savings and Loan Association, Plaintiff-Appellee,**

v.

**Spencer H. BLAIN, Jr., Defendant-Appellant,**

**William M. Ravkind, Appellant.**

**FEDERAL SAVINGS & LOAN INSURANCE CORPORATION as Receiver for Empire Savings and Loan Association, Plaintiff-Appellee,**

v.

**Spencer H. BLAIN, Jr., Defendant-Appellant.**

**Nos. 86–1320, 86–1360.**

United States Court of Appeals, Fifth Circuit.

Jan. 12, 1987.

Deborah Goodall, Dallas, Tex., for Blain.

Cheryl B. Wattley, Dallas, Tex., for Ravkind.

Michael Wall, Hutcheson & Grundy, Timothy M. McDaniel, Houston, Tex., Robert O. Lamb, David M. Taylor, Dallas, Tex., for Federal Sav. & Loan Ins. Corp.

Before REAVLEY and POLITZ, Circuit Judges, and ROBINSON,* District Judge.

POLITZ, Circuit Judge:

In these consolidated appeals, Spencer H. Blain, Jr. and his attorney William M. Ravkind appeal orders of the district court: (1) holding them in civil contempt for violating a preliminary injunction; (2) removing these proceedings from under the seal of the court; (3) declining to dissolve the injunction; and (4) providing plaintiff, Federal Savings and Loan Insurance Corporation (FSLIC), with ancillary relief. Finding factual support for the district court's determinations, and neither error of law nor

---

* District Judge of the Northern District of Texas, sitting by designation.

abuse of discretion in its rulings, we affirm.

## Background

We briefly summarize the facts pertinent to our resolution of these appeals. On January 23, 1986 the district court entered an "Agreed Preliminary Injunction Prohibiting Transfer of Assets." This decree was consented to by Blain and the FSLIC and was the result of two consolidated actions brought against Blain and others by the FSLIC as receiver for Empire Savings & Loan. The injunction, which was ordered sealed, provides in pertinent part:

ORDERED that, pending final judgment ... Spencer H. Blain, Jr., his agents, attorneys or representatives or others who may act on his behalf in any way, including William M. Ravkind, Trustee for Spencer H. Blain, Jr. ... are hereby restrained and enjoined from directly or indirectly transferring, selling, assigning, dissipating, concealing, encumbering, impairing, offsetting, or otherwise disposing of in any manner ... any assets, property, accounts or other things in which he has an interest without the prior written approval of [FSLIC] including specifically (1) any funds received by James L. Pyle, Trustee, in the amount of $14,901,660 for the benefit of Spencer H. Blain, Jr. or any assets, properties or other things acquired directly or indirectly with such funds....

The monies received by James L. Pyle as trustee for Blain are referred to herein as the "Starker Trust" funds.

In June 1985, Ravkind pledged a $600,000 certificate of deposit, purchased with funds derived from the Starker Trust, as security for a personal promissory note in the amount of $600,150. On March 21, 1986, prior to the due date of the note, Ravkind used the proceeds of the CD to pay the secured note. On April 1, 1986, Ravkind closed a bank account containing $27,462.36 from Starker Trust monies and commingled the proceeds with his own. On April 22, 1986, Ravkind used a $500,000 CD purchased with Starker Trust funds as a setoff against a personal loan. In each instance Blain was aware of Ravkind's actions.

On April 10, 1986 Blain filed a motion to dissolve the injunction. On April 11, 1986 the FSLIC initiated contempt proceedings against Blain and Ravkind and moved to unseal the injunction. Following a hearing, the district court denied the motion to dissolve, found both in civil contempt, directed the repayment of the $1.1 million-plus to the trustee, and took the motion to unseal under advisement. Blain and Ravkind appealed the order of contempt. Blain also appealed the denial of the motion to dissolve. Thereafter, the court partially granted the FSLIC's motion to unseal and Blain appealed. Pending our resolution of the appeals, we stayed enforcement of the contempt order.

## Analysis

Initially, Blain maintains that the district court erred in refusing to conduct a hearing to determine whether the FSLIC was entitled to the injunction. Blain contends that despite his original agreement, he retained the right to revoke his consent and require that the FSLIC prove its entitlement to the injunction. He argues that the FSLIC could not satisfy its burden of proof.

The injunction provides that "neither [FSLIC] nor Spencer H. Blain, Jr. waive rights either may have with respect to the subject matter of this Order and may apply to this Court for modification of this Order as justice may require." Blain contends that this provision establishes his right to revoke his consent to the injunction, thereby vitiating the injunction and forcing the FSLIC to prove the imperative for an injunction.

Blain misappreciates the legal import of a consent decree. A consensual order has the same binding force and effect as any judicial order, once it is entered by a court acting within its jurisdiction, and "must be obeyed until [it] is vacated or withdrawn." *W.R. Grace & Co. v. Local 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183,

76 L.Ed.2d 298 (1983). By consenting to the injunction, Blain "chose to renounce what [he] might otherwise have claimed, and the decree of a court confirmed the renunciation and placed it beyond recall." *United States v. Swift & Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932). Blain's reliance on the quoted provision to suspend the effect of this long-standing rule is misplaced. The language of the injunction provides no basis for the asserted withdrawal of Blain's consent. It merely states the obvious: neither party waived any rights that might exist in the property subject to the injunction, and both reserved the right to seek modifications, an established legal principle. *United States v. Swift & Co.; Roberts v. St. Regis Paper Co.*, 653 F.2d 166 (5th Cir.1981). The language of the injunction is specific and clear. We are persuaded of no sound reason to reject its express language and to look beyond the text in search of its meaning. Blain's arguments to the contrary are rejected.

Finding the injunction valid, we next consider whether Blain or Ravkind violated its terms. They advance similar arguments, maintaining that the injunction applies only to the Starker Trust funds "in which [Blain] has an interest," and that the funds belonged to Ravkind, paid to him as legal fees earned prior to the injunction. Thus, the argument runs, since Ravkind used his own money, neither violated the injunction.

It is not clear from the reasons assigned by the district court whether the court rejected the testimony that the funds had been paid to Ravkind for services rendered, or whether the court read the injunction to apply to the expenditure of Starker Trust funds by both Blain and Ravkind. In either event, appellants are not aided. If the former, we cannot say the factual finding is clearly erroneous; if the latter, the injunction specifically prohibits Ravkind's use of Starker Trust assets.

■ The record contains ample evidence from which the trial court could find that Blain owned or had an interest in the Starker Trust monies used by Ravkind. Ravkind never reported any of the subject funds on his income tax returns, despite present arguments that he received the money in payment for legal services rendered. We do not lightly infer a deliberate failure to report taxable income by a member of the bar who is a former trial attorney for the tax division of the Department of Justice. In addition, Ravkind testified that he had Blain's "permission" and "authority" to use the disputed funds. If the monies were indeed Ravkind's legal fees he would have needed neither permission nor authority from Blain to use his money as he saw fit. The record contains countervailing testimony, but considering the record as a whole, we cannot say that a factual determination that the funds belonged to Blain would be clearly erroneous.

■ If the district court's ruling rests on the conclusion that the injunction restricted Ravkind's ability to use Starker Trust funds in his financial transactions, we are in accord. The injunction prohibits Blain and his agents, with Ravkind specifically named, from transferring, disposing, or allowing to be transferred or disposed certain property "in which [Blain] has an interest ... including specifically (1) any funds received by James L. Pyle, Trustee, in the amount of $14,901,660 [the Starker Trust funds]...."

Even though it modifies the "in which [Blain] has an interest" clause, the import of the provision specifying the Starker Trust funds in their full amount could not be more manifest. The entire Starker Trust, *all* $14,901,660 of it, including "any assets, properties or other things acquired directly or indirectly with such funds," is covered by the injunction.[1]

If Blain or Ravkind held serious doubts as to the application of the injunction they

---

**1.** At this point it is appropriate to underscore that our opinion today is not to be taken as authority for the proposition that there may be recovery of both the totality of the Starker Trust funds and all assets purchased with those funds. Obviously there is to be no double recovery. This spectre further supports the verified accounting ordered by the district court.

could have sought guidance from the court, particularly in light of the position of the FSLIC that the CDs Ravkind was using in payment or setoff were within the ambit of the injunction. They could have done so without placing themselves at risk. They opted to act unilaterally.

Blain raises an additional argument, contending that although the district court purportedly found him guilty of civil contempt, it actually adjudged him guilty of criminal contempt in violation of his rights to due process. We are not persuaded.

The test for determining the civil or criminal nature of a contempt order is the apparent purpose of the trial court in issuing the contempt judgment. If the court's purpose is punitive, or if the injunction is "designed to vindicate the authority of the court," the contempt judgment is considered criminal. If, however, the court's purpose in issuing the injunction is coercive or remedial, the contempt is civil in nature.

*In re Hunt,* 754 F.2d 1290, 1293 (5th Cir. 1985) (citations omitted). *See also Port v. Heard,* 764 F.2d 423 (5th Cir.1985).

■ The contempt decree before us is remedial—Blain is subject to a civil contempt order. He maintains that he is unable to purge himself because the injunction limits him to spending a maximum of $3,000 per month and he is thus unable to come forward with the $1.1 million-plus required for compliance. "Since contempt is a conditional sanction, the person in civil contempt must be given the opportunity to bring himself into compliance." *Newman v. Graddick,* 740 F.2d 1513, 1524–25 (11th Cir.1984) (citing *Lance v. Plummer,* 353 F.2d 585 (5th Cir.1965), *cert. denied,* 384 U.S. 929, 86 S.Ct. 1380, 16 L.Ed.2d 532 (1966)). *See also In re Magwood,* 785 F.2d 1077 (D.C.Cir.1986). Blain argues that be-

cause he cannot bring himself into compliance, the contempt order must be vacated.

On the record before us we cannot conclude either that Blain is unable to comply or that he made a good faith effort to do so. *See Newman v. Graddick; Lance v. Plummer.* There is no showing that Blain is unable to borrow sufficient funds or that he is unable to satisfy the order jointly with Ravkind. The record is devoid of evidence that Blain has made a good faith effort to comply.[2] Our holding today does not preclude a subsequent motion to vacate the contempt order, by which Blain might seek another opportunity to lay an appropriate evidentiary basis for this claim.[3]

Finally, Blain challenges the order of the district court lifting the seal previously impressed upon the injunction, and removing the seal from subsequent proceedings. The seal remains in effect over all prior filings and proceedings. Blain suggests the possibility of criminal prosecution and argues that unsealing the injunction and proceedings will hamper his right to receive a fair trial if he is indicted.

■ The district court's discretion to seal the record of judicial proceedings is to be exercised charily, *Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059 (3d Cir.1984). Notwithstanding, there are well-recognized situations in which the seal may and should be used. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). We need not now enter that legal minefield. *See, e.g., First Amendment Coalition v. Judicial Inquiry & Review Board,* 784 F.2d 467 (3d Cir.1986) (*en banc*) (access to judicial disciplinary proceedings); *In re Reporters Committee for Freedom of the Press,* 773 F.2d 1325 (D.C.Cir.1985) (access to discovery documents in civil litigation); *United States v. Hubbard,* 650 F.2d 293 (D.C.Cir.1980) (access to records in criminal prosecution).

**2.** Ravkind submitted affidavits from bank officials attesting to their reluctance to loan him the full sum. No mention is made, however, of loan of a portion of the total sum.

**3.** Blain and Ravkind challenge the trial court's order requiring that they finance an accounting

of all assets subject to the injunction. Considering the cited three violations of the decree, involving over $1.1 million, the trial court did not abuse its broad discretion in ordering a verified accounting at appellants' cost.

In the instant case, Blain requested that the injunction be placed under seal to minimize disruption of his business affairs. The FSLIC agreed to this request. A few days after entry of the injunction, Blain's attorney sent a copy to a title insurance company. Breach of the seal is akin to pregnancy; there is no such thing as an insignificant amount. This change in circumstance justified the trial court's modification of its sealing order. Further, we do not address Blain's speculative due process-failure argument. That remains for another day in another forum.

All orders appealed are AFFIRMED. The prior stays issued by this court are VACATED. The mandate shall issue forthwith.