**Frank GILBERT and Patricia Gilbert, individually and on behalf of the Estate of Darryl Gilbert, Plaintiffs**

v.

**TEXAS MENTAL HEALTH AND MENTAL RETARDATION, et al., Defendants.**

Civ. No. 3:94–CV–2168–H.

United States District Court,
N.D. Texas,
Dallas Division.

May 16, 1995.

Deborah Cortez Hiser, and Richard Anthony Lavallo, Advocacy Inc., Austin, TX, for plaintiffs.

Dennis R. Garza, and Linda Marie Daniels Kearney, Attys. Gen. of Texas, Austin, TX, for defendants.

## *MEMORANDUM OPINION AND ORDER*

SANDERS, District Judge.

Before the Court are the following motions and related pleadings: (1) Defendants' Motion to Transfer Venue, Motion to Dismiss and Brief and Alternative Motion for More Definite Statement, filed December 27, 1994, and Plaintiff's Opposition, filed January 30, 1995; (2) State Defendants' Motion to Transfer Venue, Motion for Partial Dismissal with Supporting Brief, and Original Answer, filed December 27, 1994, and Plaintiff's Response in Opposition, filed January 13, 1995; (3) Defendant Upton's Motion to Transfer Venue with Brief in Support and Original Answer to Plaintiff's First Amended Complaint and Jury Demand, filed December 29, 1994,

Plaintiff's Response in Opposition, filed January 13, 1995, and Defendant' Upton's Reply, filed February 23, 1995; and (4) State Defendants' Amended Motion to Transfer Venue and Reply to Plaintiff's Response in Opposition, filed January 31, 1995, and Plaintiff's Response in Opposition to State Defendants' Amended Motion to Transfer Venue, filed February 10, 1995.[1]

## I. Background [2]

This case involves the death of Darryl Gilbert ("Gilbert") on December 2, 1992. Gilbert, who was dually diagnosed with severe mental retardation and depression, lived at home with his parents, Plaintiffs Frank and Patricia Gilbert ("the Gilberts"). With the exception of a brief respite stay at Beaumont State Center in 1992, Gilbert had lived with his parents for approximately thirty years. He required regular assistance with such daily tasks as eating, bathing, and attending to his bodily needs.

Gilbert's condition began to worsen in 1992 when, apparently suffering from depression, he began refusing to get out of bed. As Gilbert's condition deteriorated, Plaintiffs concluded that they could no longer provide the physical assistance that he required. They tried to arrange a residential placement for Gilbert and were told that admitting him to Rusk State Hospital would expedite such a placement. Second Amended Complaint ¶ 41. Gilbert was admitted to the general admission unit of Rusk State Hospital ("RSH") on September 25, 1992. He remained there until October 4, when his parents, during a visit, discovered that he had multiple bruises and had not been shaved or bathed for some time. Id. ¶ 43. At their insistence, he was released into their care.

Plaintiffs continued caring for Gilbert at their home until November 1992, when they again tried to locate an appropriate placement for him. Because Gilbert was dually diagnosed with mental retardation and mental illness, Plaintiffs were advised that he could best be served at RSH's Multiple Disabilities Unit ("MDU"). Gilbert was admitted to the MDU on November 20, 1992. Plaintiffs allege that he was subsequently subjected to physical abuse and received inadequate medical treatment, which culminated in his death from peritonitis on December 2, 1992. Second Amended Complaint ¶¶ 48–60.

Gilbert's parents filed suit on October 12, 1994 against twenty-eight defendants, including the Texas Department of Mental Health and Mental Retardation ("TXMHMR") and RSH. Plaintiffs filed their First Amended Complaint on November 22, 1994 and their Second Amended Complaint on January 30, 1995. Suing in their individual capacities and as representatives of Gilbert's estate, Plaintiffs allege that Gilbert's death was caused by unsafe conditions and inadequate medical and psychiatric treatment at RSH. See Second Amended Complaint ¶ 1. They seek damages and attorneys' fees. See id. ¶¶ 3, 114. In addition, Plaintiffs seek a declaration that Defendants' actions constitute violations of the Americans With Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and 42 U.S.C. § 1983. Id. ¶ 4.

## II. Analysis

In the four motions before the Court, certain Defendants seek dismissal of this case. All Defendants, in addition, assert that this action has been filed in the wrong District and ask the Court to transfer venue to the Tyler Division of the Eastern District of Texas. The Court addresses only the venue issue, as it is dispositive.

Plaintiff asserts causes of action under 42 U.S.C. § 1983, the Rehabilitation Act, and the Americans With Disabilities Act. Because none of these statutes contains a specific venue provision, the Court looks to the general venue statute, 28 U.S.C. § 1391, in

---

**1.** The Court has also received the following: (1) Defendants' Motion for Partial Dismissal With Brief in Support and Answer to Plaintiff's Second Amended Original Complaint, filed February 23, 1995, and Plaintiff's Response in Opposition, filed March 15, 1995; and (2) Defendants' Motion to Stay Discovery, filed February 27, 1995, and Plaintiff's Response in Opposition, filed March 10, 1995. The Court does not address these motions at this time.

**2.** Factual background is taken from Plaintiffs' Second Amended Complaint.

considering Defendants' request. Section 1391 provides, in pertinent part, that:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is not a district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Defendants contend that venue is improper in the Northern District because no Defendant resides in the Northern District and because the acts and omissions giving rise to the claim occurred in Cherokee County, which is in the Eastern District of Texas. *See, e.g.,* Defendant Upton's Motion to Transfer at 3. Plaintiffs concede that venue in the Northern District is improper under the general venue statute. *See* Plaintiff's Response to Amended Motion to Transfer at 1 ("Plaintiffs concede that this is not the district where any defendant resides or [in] which a cause of action arose."). Nonetheless, Plaintiffs contend that because this Court has jurisdiction over *R.A.J. v. Gilbert,* a class action relating to conditions at state hospitals administered by Defendant TXMHMR, it should retain this case.

Plaintiffs' argument is based on *Gillespie v. Crawford,* 858 F.2d 1101 (5th Cir.1988), in which the Fifth Circuit required a class member's claims for equitable relief to be transferred to the court presiding over the class action. Because *Gillespie* did not address the situation in which a class member asserts both legal and equitable claims, Plaintiffs urge this Court to adopt the position of the Eighth Circuit, which gives the class action court the option of retaining jurisdiction over individual damage actions filed by class members. *See Goff v. Menke,* 672 F.2d 702, 704 (8th Cir.1992).

An examination of Fifth Circuit case law helps place Plaintiffs' request in context. The *Gillespie* decision is only the most recent in a line of cases addressing the extent to which class action courts should retain jurisdiction over individual suits by class members. The Circuit first considered the issue in the context of *Ruiz v. Estelle,* a class action initiated by prisoners to challenge the conditions of their confinement in Texas prisons. In *Johnson v. McKaskle,* 727 F.2d 498 (5th Cir.1984), it held that legal or equitable claims by class members "should be transferred to the district court that fashioned the *Ruiz* injunctive decree." In *McKaskle,* as in the case before the Court, the plaintiff's damage allegations were based on actions that allegedly violated a decree issued by the class action court. In such a case, the Circuit opined, transferring the case to the class action court would ensure minimal federal intervention, even-handed relief, and orderly administration of the injunction. *McKaskle,* 727 F.2d at 501. The Fifth Circuit subsequently reached the same result in an individual suit brought by a member of the plaintiff class in *Lelsz v. Kavanagh,* a class action seeking relief from unconstitutional conditions in state schools administered by Defendant TXMHMR. *See Savidge v. Fincannon,* 768 F.2d 639, 640–41 (5th Cir.1985) (*Savidge I*).

The Fifth Circuit soon reversed its position, recognizing that "implementation of the *Johnson* policy had deluged the Eastern District of Texas with more cases than it could effectively handle and had created an administrative nightmare." *Savidge v. Fincannon,* 784 F.2d 186, 187 (5th Cir.1986) (*Savidge II*). Consequently, the Circuit recalled the mandate in *Johnson,* deleted relevant language from the *Johnson* opinion, and ended its administrative policy of transferring individual actions by *Ruiz* class members to the court presiding over *Ruiz.*[3] *Savidge II,* 784

---

3. The somewhat complicated procedural history of the *Johnson* case was later explained by the Fifth Circuit as follows:

Subsequently, in *Green v. McKaskle,* [770 F.2d 445] [(5th Cir.1985)] a panel of the court called

into question the wisdom of allowing *Ruiz* [*v. Estelle,* 503 F.Supp. 1265 (S.D.Tex.1980)] class members to maintain separate lawsuits and of referring all of these hundreds of cases to a single district court in Texas. The circuit vot-

F.2d at 186–87. Based on the "experience and insight" it had gained from *Johnson,* the Circuit concluded that the same considerations applied to individual cases brought by *Lelsz* class members. Accordingly, the court recalled relevant portions of its opinion in *Savidge I.*

In *Gillespie,* the Circuit was faced with a related issue: whether a *Ruiz* class member should be barred from pursuing an individual lawsuit that sought equitable relief within the subject matter of the class action. The court held that such suits should be barred because allowing them "would interfere with the orderly administration of the class action and risk inconsistent adjudications." *Gillespie,* 858 F.2d at 1103. Plaintiffs characterize the *Gillespie* decision as creating an exception to the requirements of the general venue statute, 28 U.S.C. § 1391. As they have noted, however, the Fifth Circuit did not address the issue of individual damage suits. Plaintiffs contend, nonetheless, that *Gillespie* "reopened the door on permitting a court presiding over a class action to retain jurisdiction of individual damage actions filed by class members wherever possible." Plaintiffs' Response to State Defendants' Motion to Transfer Venue at 6. In the absence of clear Fifth Circuit precedent, Plaintiffs argue, the Court should adopt the position of the Eighth Circuit and retain jurisdiction over this case.

Upon consideration, the Court declines to expand the Fifth Circuit's *Gillespie* holding to encompass individual damage suits brought by *R.A.J.* class members. In allowing the class action court to hear individual damage actions brought by class members, the Eighth Circuit stressed the need to avoid duplicative actions and inconsistent interpretations of the same decree, the same considerations that motivated the Fifth Circuit's initial holdings in *Johnson* and *Savidge I.*

*See Goff v. Menke,* 672 F.2d 702, 704 (8th Cir.1982); *Johnson,* 727 F.2d at 501; *Savidge I,* 768 F.2d at 640–41. Plaintiffs assert that these concepts of "proper judicial administration" have never been rejected and that the *Johnson* decision was rescinded only because of "the considerable administrative and judicial difficulties inherent in the *Ruiz* litigation." Plaintiffs' Response to State Defendants' Motion to Transfer Venue at 5.[4]

In *Savidge II,* however, the Fifth Circuit acknowledged the advantages of having all claims heard by the class action court but concluded that "[t]he administrative difficulties that flow from the concentration in a single court of the individual claims of all patients in Texas state mental institutions more than offset the advantages of having a single judge preside over these claims." *Savidge II,* 784 F.2d at 187. The Court finds the Circuit's conclusion equally applicable to the case at bar. The *R.A.J.* class consists of all past, current, and future patients in eight state hospitals under the control of Defendant TXMHMR. As Plaintiffs point out, the Court has yet to be deluged with individual damage actions filed by class members. The possibility of administrative difficulties if the Court announces a policy of retaining jurisdiction over such cases is, however, an obvious one. Consistent with *Savidge II, supra,* the Court concludes that venue in this district is improper and that this case must be transferred to the Eastern District of Texas, Tyler Division, pursuant to 28 U.S.C. § 1406(a).

## III. Conclusion

For the reasons set forth above, the Court concludes that venue in this District is improper. Accordingly, Defendants' venue transfer motions are **GRANTED,** and this case is hereby **TRANSFERRED** to the

---

ed to rehear *Green* en banc, presumably to confront and resolve the *Green* panel's criticism of the *Johnson* decision, but certain circumstances made en banc review impracticable—*Green*'s parole had mooted the question whether he might maintain a separate lawsuit, and the Judicial Council of the Fifth Circuit had vacated the part of the *Johnson* opinion requiring that all cases implicating the *Ruiz* court's decree be transferred to the *Ruiz* court.

*Lewis v. Woods,* 848 F.2d 649, 653 (5th Cir.1988).

4. They further contend that no similar administrative difficulties would result if this Court announced a policy of retaining jurisdiction over damage suits filed by *R.A.J.* class members. *See id.,* Ex. B, Affidavit of Edward B. Cloutman III at ¶ (indicating that this is the first federal district case implicating the *R.A.J.* settlement agreement).

Eastern District of Texas, Tyler Division. *See* 28 U.S.C. § 1406(a).

SO ORDERED.