**Charles LANCE, Jr., Appellant,**

**v.**

**Lucille PLUMMER et al., Appellees**

**(two cases).**

**Nos. 21904, 22035.**

United States Court of Appeals
Fifth Circuit.

Dec. 9, 1965.

C. Harris Dittmar, Jacksonville, Fla., Hamilton D. Upchurch, St. Augustine, Fla., Upchurch & Upchurch, St. Augustine, Fla., Bedell, Bedell, Dittmar & Smith, Jacksonville, Fla., of counsel, for appellant.

William M. Kunstler, New York City, Tobias Simon, Miami, Fla., Jack Greenberg, Leroy D. Clark, Charles S. Ralston, New York City, for appellees; Ronald Goldfarb, of counsel.

James W. Kynes, Atty. Gen., George R. Georgieff, Asst. Atty. Gen., for State of Florida, amici curiæ.

Before TUTTLE, Chief Judge, THORNBERRY, Circuit Judge, and CARSWELL, District Judge.

TUTTLE, Chief Judge:

This is an appeal from an injunction forbidding the appellant to interfere with the compliance by certain St. Augustine restaurants and motels with Title II of the Civil Rights Act, and from a judgment of civil contempt against appellant for violation of the order of injunction. The two appeals have been consolidated in this Court, so that the validity of the injunctive order and the order adjudging Lance in civil contempt are both before the Court for consideration.

On July 20, 1964, Lucille Plummer and seven other named individuals filed suit against James E. Brock and twenty other named individuals and corporations (designated as Class I defendants), who were owners, managers or operators of certain restaurants or motels in St. Augustine, Florida, and against Holsted R. Manucy and seventeen other named individuals, Ancient City Hunting Club or Ancient City Gun Club, and U. S. Klans, Knights of the Ku Klux Klan, Inc. (designated as Class II defendants). Jurisdiction of the district court was invoked pursuant to (a) 28 U.S.C.A. § 1343 (3), as also the Fourteenth Amendment; (b) 42 U.S.C.A. §§ 1981–85; and (c) Title II of the Civil Rights Act of 1964.

On July 28, 29 and 30, 1964, the district court received evidence on the plaintiffs' application for preliminary injunction with respect to Class I defendants. A subsequent hearing was scheduled on plaintiffs' application for preliminary injunction with respect to Class II defendants, but was not held, because on July 30, 1964, counsel for certain of the named Class II defendants, in a stipulation entered into in open court, consented to the entry of a temporary restraining order enjoining his clients, until further order of the court, from committing any of the acts charged in the complaint to have been theretofore committed by them, without admitting that such acts had in fact been committed.[1]

On August 5, 1964, the district court entered findings of fact and conclusions of law, in which it was found that one or more named plaintiffs had on some occasion subsequent to July 2, 1964, been refused service in each of the named Class I defendants, "solely on the ground of race or color," and the court concluded that preliminary injunction should issue. The injunction, issued to be effective August 8, 1964, forbade the Class I defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with them from further violation of Title II.

With respect to the Class II defendants, the injunction order further provided:

"3. Effective immediately, and without the posting or filing of injunctive bond by Plaintiffs, it is fur-

[1.] The acts charged against the Class II defendants, in general, were that they were engaged in threatening and intimidating the restaurant owners and operators from complying with Title II of the Civil Rights Act of 1964 requiring that such restaurants and other public accommodations offer their services to persons without respect to race.

ther ORDERED that Holsted Richard Manucy, Gene Manucy, Holsted David Manucy, Herbert R. Manucy, Alonzo H. Manucy, Jr., Buddy Cooper, M. E. Cooper, Bobby Lee Bacon, Melvin E. Manucy, Pat Winston Howard, and Holsted Richard Manucy as President of Ancient City Hunting Club and/or Ancient City Gun Club, an unincorporated and unchartered voluntary association of individuals, and each member of said association or organization, *and any other persons to whom notice or knowledge of this Order may come,* shall not in any way interfere with, molest, threaten, intimidate or coerce any person of the Negro race with the purpose of interfering with such person's right to seek, use and enjoy the goods, services, facilities, privileges, advantages and accommodations of any, all or either of the places of public accommodation identified by name and address in Paragraph 1 hereof, nor attempt to so interfere with, molest, threaten, intimidate or coerce any person of the Negro race for such purpose, nor punish or attempt to punish any person of the Negro race for exercising, having exercised or attempting to exercise any right or privilege granted hereunder.

"4. Effective immediately, and without the posting or filing of injunctive bond by Plaintiffs, it is further ORDERED that none of the persons specifically identified in Paragraph 3 hereinabove, *nor any other person to whom notice or knowledge of this Order may come,* shall in any way interfere with, molest, threaten, intimidate or coerce any, all or either of the several Class I Defendants identified by name, es-

tablishment and address in numbered Paragraph 1 hereof, with the purpose of causing him, her, it or them to deny, abridge, withhold, condition, limit or otherwise interfere with Negro persons in their securing food, beverages, service and accommodations at and in their admission to and use and enjoyment of the goods, services, facilities, privileges, advantages and accommodations, of any, all or either of the said establishments identified in Paragraph 1 hereof." (Emphasis supplied.)

On August 11, 1964, Arthur Funderberk, and two other Negroes, none of whom was a named plaintiff in the case, sought and received service in the Pancake House, a restaurant operated by William Chew, one of the named Class I defendants. The appellant, Charles Lance, Jr., who was a volunteer, unsalaried, deputy sheriff [2] who said he had been instructed by the sheriff of St. Johns County to protect Negroes testing the Civil Rights Law, was in the restaurant at the time. As Funderberk and his companions left the restaurant, they were followed by two white teenagers. The trial court found that Lance cursed the three Negroes who testified they heard the words, "black bastards." Lance testified that he said, "You know I have to protect these black sons of bitches."

On the following day, Funderberk and a companion unsuccessfully sought to register for a room in the Palms Congress Inn motel, adjoining the Pancake House and a part of the same establishment owned by Empire Inns, Inc., and managed by William Chew. At this juncture Lance, who had driven up to the motel right behind Chew entered the motel, and upon receiving what the court could find to be a "signal" from Mrs. Chew, proceeded to follow the Negroes,

2. The Florida statute permits a sheriff of a county to name any number of deputies, with or without salary, each of whom is apparently bonded by many of whom apparently are uncompensated and are appointed solely at their request. St.

Johns County apparently had a great number of these so that, in fact, the trial court found that its sheriff appointed most everyone who asked and that he actually did not know all of his own deputies by name.

after they left the motel in a car at a time when the trial court found they neither needed nor asked for any protection from the sheriff's office; nor were they informed by Lance at this time or any other time that he had any such purpose in following them.[3]

On August 14, 1964, a sworn petition was filed in the main cause, referring to the injunction order of August 5 and charging that Chew and Empire Inns, Inc., had violated the order and should be ordered to show cause why they should not be held in civil contempt. In addition, an affidavit was sworn to, stating that "Upon information and belief  *  * Charlie Lance  *  *  * is a member of the Ancient City Hunting Club, and as such  *  *  * a Class II Defendant herein." On August 14, the trial court issued an order directing "the defendants William Chew  *  *  * Empire Inns, Inc., and Charles Lance Jr.," to appear before him on August 17 to show cause "why they should not be adjudged to be in civil contempt  *  *  * by their wilful disobedience of the Order for Interlocutory Injunction entered  *  *  * on August 5, 1964." Before the show cause order was served upon Lance, on the evening of August 14, Funderberk drove up to the adjoining motel and let two white men out of his car. At this time, appellant Lance was having dinner with his family in the Pancake House; whereupon he left his family and again followed Funderberk for a considerable distance.[4]

On August 15, the show cause order was served upon Lance and a hearing was had resulting in findings near the close of the hearings including the following:

"With respect to the respondent, Charles Lance, Jr., the Court finds that, first of all, he had actual knowledge and notice of the entry of the injunction and, in general, of its terms; that on August 11, 12 and 14, he violated the terms of the Injunctive Order by cursing these three men, Funderberk, McBride and Lawton, as they were leaving the premises of the Palms Congress Restaurant, the Pancake House, I guess it's called; that he further violated the terms of paragraphs 3 and 4 of the Injunctive Order by intimidating, molesting, threatening, or attempting to do these things, to Arthur Funderberk on August 12

---

3. On August 13, Funderberk signed an affidavit to the foregoing facts stating that Lance "followed us all over town until we went back to the office." The extent to which Lance did, in fact, follow them "all over town," is indicated by the following testimony which was largely the basis of the trial court's finding that his conduct threatened the three Negroes: "And I drove on out across San Marco Avenue and drove on, proceeding up Ponce de Leon (93) Boulevard, and I could see Mr. Chew coming behind—I mean, Mr. Lance: excuse me—Mr. Lance coming behind me in this jeep station wagon.

I drove on down San Marco Avenue, I mean Ponce de Leon Boulevard, and Mr. Charlie Lance came on up on the Boulevard and he proceeded right on behind me. I got the impression he was following me, so—
"THE COURT: You got what?
"THE WITNESS: The impression he was following behind me.
"THE COURT: All right.
"THE WITNESS: And so, instead of going the regular route that I would take, I proceeded to take a different direction. I turned off a street I ordinarily don't go to see was he following me. I turned off the street; Mr. Lance turned off the street. I speed up a little bit; Mr. Lance would speed up.

I went down to a library. I made a left turn. And that was out of the way that I would ordinarily go. And when I got on the street, made a left turn, Mr. Lance did the same thing. I turned left (94) at the next street; Mr. Lance did the same thing.

I went back up on Ponce de Leon Boulevard; Mr. Lance did the same thing.

So then I got the impression he was following me.

I proceeded on to my destination and he followed me until I came to the vicinity of the SCLC office."

4. Testimony which the trial court could credit showed that Lance again followed the Funderberk car which took a devious and evasive route. The following was so persistent on this occasion that Funderberk finally left his automobile and took a taxicab and went home.

and August 14 by following him away from the Palms Congress Motel and Restaurant."

Subsequently, on August 20, the trial court entered the following order:

"That by virtue of the findings herein, Charles Lance, Jr., is hereby added as a named Class II defendant in the interlocutory injunction of August 5, 1964, and further, that the respondent, Charles Lance, Jr., having been found to have actual notice of the interlocutory injunction dated August 5, 1964, and to have violated the terms of paragraphs 3 and 4 thereof is hereby found to be guilty of civil contempt. The respondent, Charles Lance, Jr., is hereby ordered to obey all terms of the interlocutory injunction issued herein. Within twenty days of this order, he shall submit a verified report to this Court that he has resigned his position as deputy sheriff of St. Johns County, Florida, and surrendered his badge and other incidents of office and of police equipment to his superiors; and that he shall no longer act under any color, guise, or pretense as a law enforcement or peace officer. That the respondent, Charles Lance, Jr., is ordered to pay to Tobias Simon, as attorney for plaintiffs, two hundred dollars as his fee in this matter and that proof of payment be included in said report. It shall be further understood that the Court, in directing the respondent, Charles Lance, Jr., to resign from his position as an honorary deputy sheriff of St. Johns County, Florida, does not intend to interfere with or restrict in any way the powers and authority of the sheriff to administer his office and to appoint deputies or employ other persons in his department. This sanction has been imposed by the Court in these specific circumstances only in view of the particular findings made as to this respondent's conduct herein, and that he was an unsalaried deputy working primarily on a voluntary basis without regular assignment or hours of duty."

Later, the trial court filed additional findings of fact which outlined factors influencing its decision to require Lance's resignation as a deputy sheriff. This latter requirement was stayed pending appeal by an order of this court entered on September 17, 1964. On September 14, 1964, the cases for permanent injunction were finally heard before the district court; all parties rested upon evidence already adduced at the hearing on the petition for interlocutory injunction. The district court then entered a permanent injunction on September 19, 1964. The appeal to this Court is taken from both the permanent injunction and the district court order of August 20, holding Lance in contempt. The cases have been consolidated for the purposes of appeal.

Upon this appeal, Lance makes several contentions attacking both the injunction order and his being treated as being subject to it and also the scope and validity of the contempt order itself.

Initially, appellant contends that the class action filed by the named plaintiffs was not an adequate vehicle upon which the trial court could enjoin conduct by the named defendants, and those in active concert with them, from denying rights to all Negro citizens. It is Lance's contention that the complaint could claim and actually achieve protection only for the named plaintiffs and could afford no protection to the particular movant, Funderberk, who sought and obtained the show cause order on the contempt proceedings. This contention is based upon the argument that § 204(a) of Title II of the Civil Rights Act of 1964 authorizes a civil action to be brought for preventive relief to "the person aggrieved" by the offender; the Act further provides a public remedy, available to the Attorney General, whenever he has reasonable cause to believe that a pattern of resistance to the full enjoyment of any of the rights secured by the Act exists. From the existence of these two remedies, plus the Act's statement in § 207(b)

that "The remedies provided in this title shall be the exclusive means of enforcing the rights based on this title," appellant asks the Court to conclude that the district court had no jurisdiction to entertain a class action for the enforcement of rights based on Title II of the Act.

We do not find this argument persuasive, especially in light of the further language in § 207(b) which says, "but nothing in this title shall preclude any individual * * * from pursuing any remedy, civil or criminal, which may be available for the vindication or enforcement of such right," and in light of the fact that other civil rights statutes containing somewhat similar wording have not in the past been so construed. See, for instance, 42 U.S.C.A. § 1983 which says, "Every person * * * shall be liable to the party injured in an action at law * * * or other proper proceeding for redress." The limitation of the authority to bring an action in that section "to the party injured" has not been held to prevent proceedings by class suits. See Sharp v. Lucky, 5 Cir., 252 F.2d 910. We conclude that Congress did not intend to do away with the right of named persons to proceed by a class action for enforcement of the rights contained in Title II of the Civil Rights Act.

Appellant's next complaint is that he was improperly required to respond to a show cause order when he was not a named defendant, and there was no proof to the effect that he was a member of one of the Class II organizations. He contends that the court had no power to bind him simply because notice or knowledge of the order came to his attention.

It is certainly true that Rule 65(d) of Federal Rules of Civil Procedure provides that "Every order granting an injunction and every restraining order * * * is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." The court's order here complained of sought to bind all persons receiving actual notice whether or not they fell within the class of "parties to the action, etc." However, the court's findings clearly showed that its order adding Lance as a Class II defendant was justified from the court's determination (1) that his conduct was "in active concert or participation" with the named defendant William Chew and his wife, and (2) that he was doing the acts alleged in the complaint as being carried on by the named Class II defendants. There was nothing to prevent the court's adding any other named member of the second class of defendants for, as alleged in the original complaint, "Each class of defendants is in addition, representative of a larger class more fully described in the Amended Complaint." While this could, of course, not bind any person who did not fall within the ambit of the Federal Rules, it did permit the addition of any named person as a Class II defendant to conform to the proof as to conduct which would justify the court's considering him as an actor in the manner outlined in the original complaint.

The admitted nexus between Lance and Chew during the period when Lance committed the acts in question, clearly warranted the trial court's determination that Lance was subject to the terms of the injunction as being in active participation with Chew. His conduct, having been properly found by the trial court to be such as was expressly prohibited by the injunctive order affecting the Class II defendants, also warranted the trial court's adding him as an added named defendant of the second class. It is true that the trial court stated that no evidence had been introduced to show that Lance was a member of one of the organizations named in Class II. This, however, did not prevent him from being named as an individual member of the class.

The next question raised by appellant tests the validity of that part of the contempt order that required him to resign his position as deputy sheriff, ordering that he "shall no longer act under any color, guise, or pretense as a law enforce-

ment or peace officer." Appellant contends that this is in the nature of punishment rather than in the nature of a sanction applied to cause Lance to comply with the court's injunctive order. The trial court concluded that the order depriving Lance of the right to serve as sheriff did not in any material way interfere with the functions of the State of Florida or of St. Johns County in any substantial manner. The court stated, "I conclude that if persons are appointed special or auxiliary deputies, without investigation, simply upon application, that it approaches the ludicrous to assert that the conduct by the Sheriff of his office is being interfered with in any meaningful way when one of such volunteers is required to divest himself of his authority by being required to resign as deputy."

The parties are not in disagreement as to the nature of sanctions that can be imposed when a civil contempt violation occurs. Only remedial or coercive sanctions may be imposed in civil contempt proceedings, such as are designed to compensate the complainant for losses sustained and coerce obedience for the benefit of the complainant. 5 Moore, Federal Practice § 38.33 at 256. See Walling v. Crane, 5 Cir., 158 F.2d 80. If the trial court, as it found here, determines that a voluntary unpaid auxiliary or extra deputy sheriff is "riding his badge," that is, using his badge for the very purpose of violating an injunctive order of the court by intimidating those whose duty, if any, it is to protect in the exercise of their rights, we think there can be no doubt about the power of the court to require him to give up his badge and cease his functions as a peace officer so long as he continues in such conduct. However, since sanctions imposed in civil contempt proceedings must always give to the alleged contemnor the opportunity to bring himself into compliance, the sanction cannot be one that does not come to an end when he repents his past conduct and purges himself. Thus, while the court here had the power to require Lance to surrender his badge and to

remain off of the sheriff's list of auxiliary deputies so long as he continued to violate the terms of the injunctive order against the Class II defendants, such prohibition could not extend beyond such term. The prohibition, therefore, that Lance should "no longer act under any color, guise, or pretense as a law enforcement or peace officer" should be modified by expressly stating that such prohibition should last only until Lance should satisfy the trial court that he was no longer in violation of the injunctive order and that he would in good faith thereafter comply with the terms of the order.

As to appellant's contention that the part of the order requiring the payment of the attorney's fee and the costs of bringing the proceedings were punitive, we think it plain that these requirements were permissible in a civil contempt proceeding. They are clearly compensatory to the injured party. Textag Co. v. Hayslip, 5 Cir., 192 F.2d 435; West Texas Utilities Co., Inc. v. NLRB, 92 U.S.App.D.C. 224, 206 F.2d 442; Nelson v. Steiner, 7 Cir., 279 F.2d 944.

We share with counsel for appellant his expressed opinion that it is desirable that the unhappy incidents that plagued the community here involved may now be a matter of the past. In order that we may hasten the time when it can be ascertained whether this is truly so, we affirm the judgment of the trial court in each of the appeals before us after modifying the order in No. 21,904, the appeal from the contempt citation, by adding the following sentence to paragraph numbered 3 of the order dated August 20, 1964:

> "The sanction affecting respondent's power to act as a law enforcement or peace officer shall continue until the said Charles Lance shall purge himself by satisfying the court that he is no longer engaging in any of the acts prohibited by paragraphs 3 and 4 of the Injunction dated August 5, 1964."

The stay heretofore entered by this Court is now vacated and the mandate of this Court shall issue forthwith.