**WHITTAKER CORPORATION;**
**Whittaker Controls, Inc.,**
**Plaintiffs–Appellees,**

v.

**EXECUAIR CORPORATION, et al.;**
**Execuair Sales Corporation; David**
**Manhan, Defendants–Appellants.**

No. 90–55176.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 10, 1991.

Decided Jan. 3, 1992.

Marian Haycock Tully, West Covina, Cal., for defendants-appellants.

Maureen McGuirl, Gibson, Dunn & Crutcher, Los Angeles, Cal., for plaintiffs-appellees.

Before BROWNING, ALARCON and NELSON, Circuit Judges.

ALARCON, Circuit Judge:

Execuair Corporation, Execuair Sales Corporation, Laurence S. Manhan, and David Manhan (Execuair) appeal from an order entered on December 15, 1989 (December 1989 Order) by the district court in favor of Whittaker Corporation and Whittaker Controls (Whittaker). In its December 1989 Order, the district court found Execuair in contempt of the order entered on June 9, 1987 (June 1987 Order) and adopted the remedies requested by Whittaker. Execuair does not challenge the order finding it in contempt. Execuair seeks reversal on the following grounds:

One. The amount of the conditional fine imposed by the district court as a coercive sanction was excessive.

Two. The district court lacked the power to require the posting of a one million dollar bond as a security for the payment of the monetary losses suffered by Whittaker as a result of Execuair's contempt of the June 1987 Order.

Three. The provisions of the December 1989 Order barring Execuair from engaging in the aircraft surplus parts business is punitive and thus an improper civil contempt sanction.

Four. The court lacked the authority to order the destruction of Execuair's entire inventory of surplus aircraft parts as a sanction for civil contempt because there was no opportunity accorded to Execuair to purge itself of its contempt, and it was invalid as a criminal sanction because the court applied the wrong burden of proof.

Five. The December 1989 Order is void because it imposed sanctions on persons who are not parties to this action.

We affirm that portion of the order imposing a conditional fine to compel compliance with the December 1989 Order and the requirement that a one million dollar bond be imposed. We modify the order banning Execuair from the aircraft parts business to permit Execuair to demonstrate compliance and affirm it as so modified. We modify the order requiring the destruction of Execuair's inventory to apply only to infringing parts and as so modified, affirm it. We decline to consider Execuair's claim that the order is inapplicable to nonparties because we conclude that Execuair has no standing to raise this issue.

## PERTINENT FACTS

Execuair is a surplus and replacement aircraft parts dealer. Some of the parts in its inventory are rebuilt versions of Whittaker parts. It also sells genuine Whittaker parts. In addition, Execuair manufactures and sells parts approved by the FAA or the armed forces.

In 1977, Whittaker filed an action for unfair competition in which it alleged that Execuair had counterfeited and palmed off parts as genuine Whittaker aircraft replacement parts. In 1985, the action was brought to trial and resulted in a judgment for Whittaker. The court issued a permanent injunction on November 18, 1986. Execuair and its employees were enjoined from using the Whittaker name unless Execuair adhered to certain restrictions.

In 1985, Whittaker initiated a second lawsuit in which it was alleged that Execuair had sold counterfeit parts to the United States Air Force at Tinker Air Force Base. As a result of settlement negotiations to settle disputes arising out of the first action and the second lawsuit, the parties stipulated that a new injunction would be entered that contained restrictions not included in the original November 18, 1986 judgment.

The district court issued a modified injunction on June 9, 1987 that incorporated the provisions set forth in the stipulation. The June 1987 Order reads as follows:

(a) The Execuair companies and/or the Manhans shall cease using and identifying such parts with their current part numbering system which consists of a Whittaker Part Number preceded by the letter or prefix "E";

(b) The Execuair companies and/or the Manhans shall immediately adopt a new and distinct part numbering system to identify each part made by or for them;

(c) The new part numbering system that Execuair companies and/or the Manhans shall adopt (1) shall not use any Part Number currently used or used in the past by Whittaker (2) shall not use the same number of digits or combination of letters and digits as any identification system used now or in the past by Whittaker, (*e.g.*, any three, four, five, six or seven digit part number, whether or not preceded by the letter or prefix "E"); (3) shall not utilize for a particular part any portion of the part number Whittaker has assigned to that part (*e.g.*, the Execuair companies and/or the Manhans shall not use 152, 677, 1526771, or any combination or subset of the number 152677-1 to designate their, the Execuair or the EPN version of a 152677-1 actuator); (4) shall use more seven (7) digits; (5) shall not impinge in any way on Whittaker's past, present or future part numbers; (6) shall not violate Paragraph 15(d) of, or the other terms that concern Whittaker trademarks or part numbers contained in, the Second Amended Final and Permanent Injunction entered in *Whittaker v. Execuair*, Civ. No. 77–

3261–CBM; and (7) shall not infringe upon, be a colorable imitation of or confusingly similar to any Whittaker trademark or part number used now, in the past or in the future; provided that, as to part numbers adopted by Whittaker in the future, this Order applies to part numbers that Whittaker shall have adopted prior to any adoption and use of such part numbers by the Execuair companies and/or the Manhans;

(e) [sic] The Execuair companies and/or the Manhans shall immediately adopt the new part numbering system for each part which they make, manufacture, have or cause to be made or manufactured; provided, however, that for parts on which Execuair has previously obtained Parts Manufacturer Approval ("PMA") (a list of said parts is attached hereto as Exhibit A), the Execuair companies and/or the Manhans need not adopt the new part numbering system until the FAA approves the use of the new part numbers on the aforementioned existing PMA parts; this Proviso, however, is conditioned on the Execuair companies and/or the Manhans applying to the FAA for revised PMA under the new part numbering system within forty-five (45) days of May 12, 1987 and on their complying in good faith and as expeditiously as possible with any FAA requests necessary to convert the part numbers;

(f) The Execuair companies and/or the Manhans shall not use any Whittaker part number, adopted now, or in the past or the future, except in lists, or other publications or documents, that cross-reference Whittaker part numbers with Execuair or EPN part numbers; provided, however, that such publications or documents shall clearly state that the Execuair or EPN part numbers do not designate parts made by or for Whittaker;

(g) The Execuair companies and/or the Manhans agree to notify customers upon inquiry that the "E" prefix and any part numbering system they will adopt in the future pursuant to this Agreement, designates a part that has been made by or

for Execuair or EPN, not by or for Whittaker; such notification shall be made in writing if the customer's inquiry is made in writing and may be made orally if the customers' inquiry is made orally;

(h) If the Execuair companies and/or the Manhans make or send any announcement concerning the part numbering system they will adopt in the future pursuant to this agreement, such announcement shall state that the new part numbers designate parts made by or for Execuair or EPN, not by or for Whittaker;

(i) David Manhan shall not form, establish, set up or operate any new company to acquire and sell or otherwise dispose of Execuair's surplus inventory as defined in Paragraph 5 of the Second Amended Final and Permanent Injunction entered in *Whittaker v. Execuair*, Civ. No. 77–3261–CBM; and

(j) The terms of the Second Amended Final and Permanent Injunction ("the Injunction") remain in effect and are not altered by this Order except that (a) insofar as Paragraph 25 of the Injunction is inconsistent with this Order, this Order controls, and (b) insofar as provided in the agreements between Whittaker and the Execuair Companies and/or the Manhans, upon the occurrence of certain events, the Injunction may apply to EPN Corporation, Jonathan A. Manhan, Eleanor Manhan, and Bonnie Manhan, directly and individually.

On August 14, 1987, Whittaker sought a temporary restraining order (TRO) and petitioned for an order to show cause (OSC) why defendants should not be held in contempt. The court granted the TRO and the OSC on August 17, 1987. An evidentiary hearing on the issue raised by these motions commenced on November 21, 1988. On December 15, 1989, the court entered an order finding the defendants in contempt and imposed the relief at issue here.

In its December 1989 Order, the court found Execuair in contempt based on the following violations of the June 1987 Order:

"a) Selling and/or offering to sell, in the ILS listings and in the British Airways letter, PMA parts bearing or identified by the old "E" part numbers after June 26, 1987;

b) Advertising and soliciting orders for non-PMA parts, made by or for Execuair or the other Execuair Companies, that were identified with the old "E" part numbers through a computer service known as Inventory Locator Service, Inc. ("ILS") after May 13, 1987;

c) Representing, in the British Airways letter and the ILS listings, that surplus parts sold or offered for sale by the Execuair Companies were genuine Whittaker parts;

d) Representing in the aforementioned offers that Execuair could supply genuine Whittaker parts; and

e) In offering to sell surplus parts in the British Airways letter and the ILS listings, failing to make certain disclosures, required under Paragraphs 22–24 of the Injunction, intended to inform customers that surplus parts sold by those parties could not be guaranteed to be genuine Whittaker parts."

The December 1989 Order, entered as a result of these contempt findings, permanently bans Execuair and the Manhans from engaging in the aircraft surplus parts business and requires the destruction of Execuair's entire inventory of surplus parts, regardless of origin, in addition to those bearing Whittaker part numbers. The contempt order also imposes a conditional fine of $10,000 for each day that Execuair fails to comply with the December 1989 Order, and requires Execuair and David Manhan to post a bond in the amount of one million dollars to insure they will be able to pay such fine, as well as any monetary award to Whittaker.

On January 2, 1990, Execuair filed an ex parte application for an order shortening time for notice of Execuair's motion for stay of order pending appeal or in the alternative a motion for reconsideration. In its memorandum of points and authorities, Execuair, for the first time, contested the scope of the relief imposed following

the entry of the contempt order and raised the issues now before this court.

In its opposition to defendant's ex parte application for reconsideration of the December 15, 1989 Order, filed January 2, 1990, Whittaker argued before the district court that Execuair's motion for a reconsideration was untimely and should not be heard. Argument was heard on January 4, 1990. In this hearing, Thomas Nishi, Execuair's counsel, stated that he "could find no cases, none whatsoever that would allow a court in a contempt proceeding to take such action." Mr. Nishi argued that, contrary to Whittaker's contentions, *Lance v. Plummer,* 353 F.2d 585 (5th Cir.1965), *cert. denied,* 384 U.S. 929, 86 S.Ct. 1380, 16 L.Ed.2d 532 (1966) did not support the scope of the sanctions awarded by the court. Whittaker argued that the court had "the power when faced with someone who will not comply with the least restrictive orders to modify that injunction and to broaden its scope to provide full remedial relief and insure that there will not be future violations." The district court did not reach the merits of Execuair's challenge to the validity of the remedies ordered on December 15, 1989. Instead, the court commented that since a notice of appeal had been filed "the guts of the case" would be before the Court of Appeals for the Ninth Circuit. The court also stated that it would "let the Ninth Circuit take a look at it and whatever they want to do, not necessarily okay with me but I know that's where the authority rests ... So I'm going to deny your motion and let's let the law lords of the Ninth Circuit reach a judgment."

## DISCUSSION

### I. THE ISSUES ON APPEAL WERE PRESENTED TO THE DISTRICT COURT.

Whittaker contends that Execuair failed to contest the validity of the remedies set forth in the December 1989 Order before the district court. We disagree. In this appeal, Execuair does not challenge the actual finding of contempt. Instead, Execuair challenges the scope of the relief awarded by the court. Whittaker, however, alleges that this court cannot consider Execuair's challenge to the scope of the awarded relief because this issue was not properly raised below.

As a general rule, an appellate court will not hear an issue raised for the first time on appeal. *Bolker v. Commissioner of Internal Revenue,* 760 F.2d 1039, 1042 (9th Cir.1985); *Rothman v. Hospital Service of Southern California,* 510 F.2d 956, 960 (9th Cir.1975). Nevertheless, no "bright line rule" exists to determine whether a matter has been properly raised below. "A workable standard, however, is that the argument must be raised sufficiently for the trial court to rule on it." *In re E.R. Fegert, Inc.,* 887 F.2d 955, 957 (9th Cir. 1989). This principle accords to the district court the opportunity to reconsider its rulings and correct its errors. *Morrow v. Greyhound Lines, Inc.,* 541 F.2d 713, 724 (8th Cir.1976).

By filing a motion for reconsideration, Execuair gave the district court a clear opportunity to review the validity of its order. The district court declined to do so. Because these issues are not raised here for the first time, we proceed to consider the merits of Execuair's appeal.

### II. VALIDITY OF THE REMEDIES ORDERED BY THE DISTRICT COURT.

Execuair contends that the remedies entered by the district court as a result of Execuair's contempt were improper civil contempt sanctions. Execuair argues that civil contempt sanctions are proper only to coerce the defendant into future compliance or to compensate the plaintiff for the damages caused by the defendant's contemptuous behavior. Execuair further argues that the punitive nature of the remedies invalidates them as proper civil contempt sanctions. Execuair fails to address whether the remedies are proper as modifications of the underlying injunction.

The sanctions imposed as a result of a contempt finding are reviewed to determine whether the district court abused its discretion. *Transgo, Inc. v. Ajac*

*Transmission Parts Corp.*, 768 F.2d 1001, 1023 (9th Cir.1985), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). Likewise, the district court's modification of a prior injunction may be reversed only if there has been an abuse of discretion. *United States v. Oregon,* 769 F.2d 1410, 1416 (9th Cir.1985).

### A. *Validity of the Fine.*

■ Execuair maintains that the fine is improper because the amount bears no relationship to the character and magnitude of the harm threatened. A court, in determining the amount and duration of a coercive fine, must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers of America,* 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); *General Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1380 (9th Cir.1986); *Shuffler v. Heritage Bank,* 720 F.2d 1141, 1148 (9th Cir.1983).

The record shows that the district court considered and applied the relevant factors. In addressing the propriety of the fine, the trial court stated: "... considering the tremendous danger to airline passenger safety which defendants' actions may have posed, as well as to Whittaker's goodwill, the fine prayed for is especially justified." In addition, the court stated "[i]n view of defendants' flagrant contempt of this court's order ... Whittaker is entitled to have a conditional compliance fine imposed upon the defendants in order to insure that they comply with all actions ordered herein." Because the district court considered the harm threatened and the effectiveness of prior injunctive relief in setting the amount, it did not abuse its discretion in imposing a coercive fine.

### B. *The One Million Dollar Bond Was a Proper Civil Sanction.*

■ Execuair also maintains that an order requiring the posting of a one million dollar bond is an improper means to secure compliance with a money judgment. Exe-

cuair argues that the usual course of action is by means of a writ of execution. Execuair relies on *Shuffler,* 720 F.2d 1141, as authority for this proposition. In *Shuffler,* this court held that the imposition of a $500 per day fine intended to coerce the appellants to pay a $190,000 judgment was improper, and that the proper means to secure compliance was to seek a writ of execution. *Id.* at 1147. This court reasoned that although "Rule 69(a), by stating that '[p]rocess to enforce a judgment for the payment of money shall be a writ of execution, *unless the court otherwise directs,*' Fed.R.Civ.P. 69(a) (emphasis added), seemingly leaves open the possibility of securing payment of a money judgment through the imposition of a contempt sanction," *Id.* at 1147–48, this exception does not "permit a federal court to 'enforce a money judgment by contempt or methods other than a writ of execution, except in cases where established principles so warrant.'" *Id.* at 1148 (citations omitted).

Although money judgments may not be enforced by the imposition of contempt sanctions, Rule 69(a) does not preclude a court from requiring a party to post bond as security to ensure the payment of future damages. The requirement that a bond be posted in this matter imposed a duty to post security, not a duty to pay a judgment by means of a contempt order. *Donovan v. Mazzola,* 716 F.2d 1226, 1239 n. 9 (9th Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984); *See Redken Laboratories, Inc. v. Levin,* 843 F.2d 226, 230 (6th Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988) (District court did not abuse its discretion in ordering contemnor to post a $25,000 bond). Thus, the writ of execution requirement of Rule 69(a) has no applicability to this case.

■ Execuair also contends that the bond is improper because the amount of the bond bears no relationship to the actual losses sustained by Whittaker. Compensatory sanctions are limited to actual losses sustained as a result of the contumacy. *General Signal Corp.,* 787 F.2d at 1380. Contrary to Execuair's contention, the one

million dollar bond bears a relationship to the loss suffered by Whittaker. The district court ordered Execuair to pay Whittaker over $600,000 in attorneys' fees, costs and expenses incurred as a result of Execuair's contemptuous conduct. The district court did not abuse its discretion in ordering Execuair to post a bond in the amount of one million dollars.

### C. *Validity of the Order that Execuair Not Engage in the Aircraft Parts Business.*

Execuair asserts further that the order banning it from engaging in the aircraft parts business is not a proper coercive sanction because it does not give the contemnor the opportunity to purge itself of the contempt by complying with the court's order. Although the order does not on its face bar Execuair from making a future demonstration to the court that circumstances warrant altering the terms of the injunction, we agree with Execuair that the order should be modified so as to state expressly that the ban remains in effect only so long as Execuair is unable to demonstrate to the satisfaction of the trial court that it can participate in the parts business without violating the provisions of the June 1987 Order.

The major distinction in contempt proceedings is that made between civil and criminal contempt. The Supreme Court has formulated the following test to determine whether a contempt sanction is civil or criminal: "what does the court primarily seek to accomplish by imposing sentence?" *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966); *Falstaff Brewing Corp. v. Miller Brewing Co.,* 702 F.2d 770, 778 (9th Cir. 1983); *Spindelfabrik Suessen–Schurr v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft,* 903 F.2d 1568, 1578 (Fed. Cir.1990).

 If the purpose of the court's order is to punish past defiance and to vindicate the court's judicial authority, it is a criminal sanction. *Falstaff,* 702 F.2d at 778; *United States v. Asay,* 614 F.2d 655, 659 (9th Cir.1980). Criminal contempt is appropriate where the actor "defies the public authority and willfully refuses his obedience." *United Mine Workers,* 330 U.S. at 303, 67 S.Ct. at 701. Prosecution for criminal contempt requires notice "stat[ing] the essential facts constituting the criminal contempt and describ[ing] it as such." Fed.R.Crim.P. 42(b). The contemnor is also entitled to a hearing. Contempt must be proved beyond a reasonable doubt. *Falstaff,* 702 F.2d at 777–78 n. 1.

 Civil contempt sanctions, by contrast, are employed for two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained. *United Mine Workers,* 330 U.S. at 303–04, 67 S.Ct. at 701–02; *Shuffler,* 720 F.2d at 1147; *Falstaff Brewing Corp.,* 702 F.2d at 778. Generally, the minimum sanction necessary to obtain compliance is to be imposed. *See Spallone v. United States,* 493 U.S. 265, 280, 110 S.Ct. 625, 634–35, 107 L.Ed.2d 644 (1990); *Shillitani,* 384 U.S. at 371, 86 S.Ct. at 1536. Unlike the punitive nature of criminal sanctions, civil sanctions are wholly remedial. *Falstaff,* 702 F.2d at 778.

 Those sanctions which are designed to coerce compliance are by their very nature " 'conditional' sanctions; they only operate if and when the person found in contempt violates the order in the future." *In re Magwood,* 785 F.2d 1077, 1082 (D.C.Cir.1986). If a sanction operates whether or not a party remains in violation of the court order, it does not coerce compliance. *Id.* "The power to impose coercive sanctions to compel obedience to an order in a civil contempt is limited by the individual's ability to comply with the court's order." *Falstaff,* 702 F.2d at 781.

Furthermore, if a sanction is designed to coerce, the court must, in determining the size and duration of the sanction, "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United Mine Workers,* 330 U.S. at 304, 67 S.Ct. at 701; *General Signal*

*Corp.,* 787 F.2d at 1380; *Shuffler,* 720 F.2d at 1148.

■■■■■ Although civil contempt may on occasion serve to vindicate the court's authority and criminal contempt occasionally benefit an adversary, these incidental effects do not affect the primary purpose of either type. *Falstaff,* 702 F.2d at 778. Further, where the elements of both civil and criminal are mixed, the sanctions are reviewed under the procedural requirements of criminal contempt. *Penfield Co. of California v. Securities & Exchange Commission,* 330 U.S. 585, 591, 67 S.Ct. 918, 921–22, 91 L.Ed. 1117 (1947); *Clemente v. United States,* 766 F.2d 1358, 1367 (9th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 881, 88 L.Ed.2d 917 (1986); *Falstaff,* 702 F.2d at 778. In this case, the procedural requirements necessary to impose criminal contempt were not followed. The order to show cause issued by the district court did not give Execuair the required notice that a criminal proceeding would take place. The court specified it found Execuair in contempt based on "clear and convincing evidence."

■■■ The order barring Execuair from engaging in the surplus aircraft business fails as a criminal contempt sanction because the court did not apply the reasonable doubt standard. We agree with Execuair that it is not be a proper civil sanction because it does not permit Execuair to purge itself of the contempt.

In *Lance v. Plummer,* 353 F.2d 585 (5th Cir.1965), *cert. denied,* 384 U.S. 929, 86 S.Ct. 1380, & 1445, 16 L.Ed.2d 532 (1966), a deputy sheriff was enjoined from interfering with actions designed to carry out the public accommodation provision of the Civil Rights Act. As a sanction for violating the injunction, the district court had ordered him to resign, requiring that he "shall no longer act under any color, guise, or pretense as a law enforcement or peace officer." *Id.* at 591–92. The Fifth Circuit modified this absolute ban, reasoning that "sanctions imposed in civil contempt pro-

ceedings must always give to the alleged contemnor the opportunity to bring himself into compliance, the sanction cannot be one that does not come to an end when he repents his past conduct and purges himself." *Id.* at 592. The court therefore modified the sanction by requiring that it expressly state that the prohibition should only last "until Lance should satisfy the trial court that he was no longer in violation of the injunctive order and that he would in good faith thereafter comply with the terms of the order." *Id.*

We follow the same course in this case. We agree with Whittaker that "[n]othing in the Contempt Order prohibits the appellants from seeking a modification of any of its provisions (including the elimination on the ban on employment in the aircraft parts industry) in the event appellants, for the first time, comply in good faith with its terms and indicate the desire and ability to comply in the future with the provisions of the June Order," Appellee's Brief at 34, but we conclude that the conditional nature of the contempt sanction should be more explicit. We therefore modify the order by adding the following subparagraph to ¶ 3 of the December 1989 Order: "s. The provisions of subparagraphs (a)-(j) of this paragraph shall remain in effect until Execuair and the other entities named in this paragraph demonstrate to the satisfaction of the court that they are able to and will comply with the provisions of the June 1987 Order." As modified, the provision is affirmed.

D. *Validity of the Order Requiring the Destruction of All Parts.*

■■■ The district court also provided in the December 1989 Order that, in addition to parts bearing Whittaker part numbers, all surplus and airplane parts in the possession of the Execuair Companies and the Manhans must be seized and destroyed. Execuair acknowledges that the district court had the power to order the destruction of the infringing parts.[1] However,

1. Execuair acknowledges that the district court had the power to order the destruction of the infringing parts. The cases are clear on this

point. *See Fendi S.A.S. Di Paola v. Cosmetic World, Ltd.,* 642 F.Supp. 1143, 1146–47 (S.D.N.Y. 1986) (Defendant who attempted to pass off

Execuair contends that this sanction is overbroad in its scope as it requires the destruction of legitimate non-infringing items.

In ordering the remedy, the district court relied on the destruction provisions of the Lanham Act and the California Business and Professions Code, both of which authorize destruction only of infringing goods.[2] Indeed, the California provision indicates that destruction of non-infringing goods is impermissible.

Nevertheless, Whittaker argues, without citation to applicable authority, that the destruction order constituted proper relief for a coercive civil contempt proceeding. We are not persuaded. The destruction of infringing goods clearly prevents future illegal conduct. The destruction of unrelated airplane parts, however, would appear to punish Execuair for its past conduct. A punitive order is a criminal sanction. *Falstaff*, 702 F.2d at 778; *Asay*, 614 F.2d at 659. As discussed above, the district court did not accord Execuair the process that is due to impose a criminal sanction.

Accordingly, we again follow the same course set forth in *Lance*, 353 F.2d at 592. We modify the December 1989 Order by adding the following subparagraph to ¶ 4: "(e) The destruction provisions of subparagraphs (a)-(d) shall apply only to infringing goods." As modified, the destruction provisions set forth in the December 1989 Order is affirmed. If there are circumstances that would make such a modification impracticable, such as the inability to distinguish infringing from non-infringing goods, the district court retains the power to modify the order upon such a factual showing.

## E. *Standing To Challenge The Scope of The Order.*

 Execuair also argues that those portions of the December 1989 Order that purport to compel compliance of persons and entities who did not appear before the court are invalid. The district court made the terms of the December 1989 Order applicable to

... (1) the defendants' present, former and future employees, officers, directors,

---

counterfeit goods as a genuine Italian product could be ordered to destroy the infringing goods); *Playboy Enterprises, Inc. v. P.K. Sorren Export Co.*, 546 F.Supp. 987, 997 (S.D.Fla.1982) (Defendants ordered to destroy all shirts bearing infringing rabbit head emblem); *Amana Soc. v. Gemeinde Brau, Inc.*, 417 F.Supp. 310, 312 (N.D.Iowa 1976), *aff'd*, 557 F.2d 638 (8th Cir.), *cert. denied* 434 U.S. 967, 98 S.Ct. 511, 54 L.Ed.2d 454 (1977) (Defendants ordered to deliver infringing beer cans to plaintiffs for destruction).

**2.** The Lanham Act provides that:

... the court may order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendant, bearing the registered mark or, in the case of a violation of section 1125(a) of this title, the word, term, name, symbol, device, combination thereof, designation, description, or representation that is the subject of the violation, or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed.

15 U.S.C. § 1118.
The California Business and Professions Code provides:
(a) ...

If in any action brought under this section, the court determines that a mark is counterfeit, the court may order the destruction of all such marks, all means of making the marks, and all goods, articles, or other matters bearing the marks, which are in the possession or control of the court or any party to the action; or, after obliteration of the counterfeit mark, the court may dispose of those materials by ordering their transfer to the State of California, a civil claimant, an eleemosynary institution, or any appropriate private person other than the person from whom the materials were obtained.

. . . .

(c) Any person who causes seizure of goods which are not counterfeits shall be liable in an amount equal to the following:
(1) Any damages proximately caused to any person having a financial interest in the seized goods by the seizure of goods which are not counterfeit.
(2) Costs incurred in defending against seizure of noncounterfeit goods;
(3) Upon a showing that the person causing the seizure to occur acted in bad faith, expenses, including reasonable attorney's fees expended in defending against the seizure of any noncounterfeit or noninfringing goods.
(4) Punitive damages, if warranted.
Cal.Bus. & Prof.Code § 14340.

shareholders, agents, partners, and representatives, (2) their former, present and future successors, assigns, parent entity or entities, subsidiaries, divisions and affiliates, (3) their present and future immediate family members (spouses, children, parents and siblings), (4) any firm or entity in which the individuals or their family members now or may in the future have any interest or from which they now or may in the future derive any benefit, and (5) those persons, firms or entities in active concert or participation with each or any of the aforementioned persons, firms or entities.

According to the court, such a sweeping order was necessary "[g]iven the propensity of the defendants for establishing new companies and enlisting the aid of others to thwart court orders...."

We do not reach the merits of this contention because Execuair and the Manhans have not demonstrated that they have standing to challenge this provision. Article III of the Constitution limits federal court to the adjudication of actual "cases" and "controversies." In order to show standing, the party must show a "distinct" and "palpable" injury that is neither "abstract" or "hypothetical." *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984), (citations omitted). The standing doctrine includes "the general prohibition on a litigant's raising another person's legal rights." *Id.*

Neither Execuair nor the Mahan defendants have demonstrated that they have been injured because the December 1989 Order includes parties not before the court. We agree with Whittaker that Execuair's contention that the district court has improperly bound persons not before it is "an argument for another day—when and if Whittaker files an action for contempt against someone whom it believes violated an Order of which the person lacked notice *and* when and if a district court holds such a person in contempt of court for an unknowing violation of the order." Appellee's Brief at 47–48 (emphasis in original).

## III. CONCLUSION

We affirm the imposition of a coercive fine and the requirement that Execuair post a one million dollar bond. We modify the order banning Execuair from engaging in the surplus aircraft parts business so that it remains in effect only so long as Execuair fails to demonstrate an ability and willingness to comply with the June 1987 Order. We modify the order directing the destruction of Execuair's inventory to apply to infringing goods only. As modified, the order is affirmed.

AFFIRMED.