99 F.3d 1146
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
SECURITIES AND EXCHANGE COMMISSION, Plaintiff,
v.
ACI INVESTORS PROTECTIVE ASSOCIATION, Defendant,
and
Patrick J. Evans, Counsel for certain investors for American
Capital Investments, Inc. ("ACI"),
Real-party-in-interest-Appellant,
Richard G. Shaffer, Court-Appointed Receiver for Defendant
American Capital Investments, Inc.,
Real-party-in-interest-Appellee.
 No. 95-56644.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 6, 1996.
Decided Oct. 22, 1996.
 
 1
 Before: FLETCHER and TASHIMA, Circuit Judges, and RESTANI,* Court of International Trade Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 This is an appeal from a civil contempt order ("Contempt Order") arising out of an SEC receivership proceeding. Appellant Patrick J. Evans ("Evans") is counsel for a group of defrauded investors ("Investors") of American Capital Investments, Inc. ("ACI"), the receivership defendant. The district court found Evans in civil contempt for a letter he sent out (the "Letter") in violation of the court's stipulated order barring certain communications ("Stipulated Order").
 
 
 4
 We have jurisdiction over this timely appeal under 28 U.S.C. § 1291. An order finding a non-party in contempt is appealable as a final order. David v. Hooker, Ltd., 560 F.2d 412, 415 (9th Cir.1977). We affirm.
 
 BACKGROUND
 
 5
 Evans has represented the Investors throughout most of their hard-fought struggle against the judicial sale of ACI real property. Under the order appointing the receiver for ACI ("Receiver"), the Investors and their counsel were restrained from, inter alia:
 
 B. using self-help ...; and
 
 6
 C. doing any act or thing whatsoever to interfere with taking control, possession or management by the receiver appointed hereunder of the property and assets owned, controlled or in the possession of ACI, or in any way to interfere with or harass the receiver or to interfere in any manner with the discharge of his or her duties and responsibilities hereunder.
 
 
 7
 In late 1994 and early 1995, the Investors challenged the Receiver's proposed sale of real property through the JH Financial Group (the "JH sale"). The district court rejected their objections, confirming the sale. It then denied their motion to set aside the sale confirmation order.[1] Thereafter, Evans and his law firm mounted a wide-ranging campaign on behalf of the Investors to thwart the JH sale's closing. Evans and his firm contacted the purchaser, title insurers, mortgage lenders and brokers involved in the JH sale to inform them of the Investors' claims and to warn them of future litigation challenging any conveyance.
 
 
 8
 In a motion for an order to show cause re contempt ("OSC"), the Receiver charged that the Investors' campaign to upset the JH sale violated the receivership stay. The district court issued an OSC and set a hearing for March 20, 1995. At the hearing, counsel for the Investors, Mr. Rayle (of Evans' firm), made the following statement:
 
 
 9
 Now if the receiver's position is that these letters or any extra-judicial activity on the part of the respondents has impaired or interfered with the closing of the sale, I can assure your Honor that any--there will be no further extra-judicial activity at all.
 
 
 10
 (Emphasis added). The district court urged the parties to negotiate an agreement governing the Investors' conduct pending a ruling on the alleged contempt.
 
 
 11
 Counsel for the Investors and counsel for the Receiver then negotiated outside the courtroom during a recess. The parties now dispute what was said in those discussions. A settlement meeting between JH Financial Group and the Investors had been pre-scheduled for that very same afternoon. The Receiver claims that his counsel agreed the Stipulated Order did not include that one pre-scheduled meeting. Evans contends that the Receiver's counsel agreed that the Stipulated Order would have nothing at all to do with the Investors' settlement discussions with JH Financial Group.
 
 
 12
 When counsel returned from the recess, Rayle told the court that "what I have proposed is a stipulation that would in essence say that the respondents will not initiate any extra-judicial communications without prior application to this Court."
 
 
 13
 After the OSC hearing, the district court took the contempt charge under submission. The Stipulated Order issued on March 23, 1995, provided:
 
 
 14
 The Court in this action hereby orders that ACI investors ... and their attorneys ... shall not communicate with persons with proposed or existing commercial relationships with the ACI receivership estate, specifically including brokers, lenders, proposed lenders, creditors, title companies, escrow companies, tenants, appraisers and property managers, and their representatives....
 
 
 15
 Over the following two weeks, the Investors pursued settlement with JH Financial Group. During these discussions, JH Financial Group's counsel, Bruce Greene ("Greene"), instructed Evans' law firm not to attempt to communicate further with his client. When settlement discussions broke down, counsel for the Receiver reminded representatives of the Investors not to communicate directly with JH Financial Group or its representatives.
 
 
 16
 On April 26, 1995, the district court issued an order denying the Receiver's contempt charge, but specifically mandating that the Stipulated Order was "still in full force and effect."
 
 
 17
 The next day, Evans sent the Letter to Greene. Evans copied Jack Herz ("Herz"), a representative of Greene's client, with the Letter. The Letter renewed the Investors' claims that the ACI properties could not be sold with defective title. It denounced the Receiver's and his counsel's "basic incompetence," taunted Greene, threatened future litigation and damage claims against Greene's client, confidently predicted success in derailing the JH sale, and said any purchaser of the ACI properties is "an idiot." At the very end, the Letter states in passing: "let me mention that the last 'offer' the ACI Investors made to JH ... is withdrawn."
 
 
 18
 The Receiver obtained a copy of the Letter and a few days later attached it as an exhibit to his ex parte application for a specially-set hearing, filed May 4, 1995. In a footnote to the application, the Receiver suggested that the Letter "violate[d] the Court's March 23, 1995 stipulated Order precluding such communications."
 
 
 19
 The district court, on its own motion, issued a second OSC re civil contempt. After briefing and a hearing, but without the safeguards of a criminal proceeding, the court found Evans in civil contempt of the Stipulated Order by clear and convincing evidence. It found that the Stipulated Order "clearly prohibited the letter at issue, which was ... to a person with a proposed commercial relationship with the ACI receivership estate." The district court dismissed Evans' argument that the Stipulated Order excluded settlement discussions. In the alternative, the court found that the Letter did not constitute a settlement discussion.
 
 
 20
 The court found the receivership incurred expenses of $6,683.50 from the contempt, and ordered Evans to compensate the receivership in that amount. This sum represents attorneys' fees that the Receiver expended in relation to the contempt proceeding.
 
 
 21
 On appeal, Evans contends that: (1) his conduct did not violate the Stipulated Order; (2) the court had no jurisdiction to bring a civil contempt proceeding on its own motion; (3) the nature and purpose of the contempt was in fact criminal, but he did not receive the protection of criminal procedures; (4) the enforcement of the Stipulated Order violated his First Amendment rights; (5) the order's enforcement violated his "absolute privilege" under California law; and (6) the order's enforcement violated public policy.
 
 DISCUSSION
 A. Scope of the Stipulated Order
 
 22
 Evans contends that the Stipulated Order did not cover the Letter, either by its terms or by the meaning of the agreement as demonstrated by the parties' course of conduct.
 
 
 23
 Punishment in a civil contempt proceeding is subject to review for an abuse of discretion. Davies v. Grossmont Union High Sch. Dist., 930 F.2d 1390, 1394 (9th Cir.), cert. denied, 501 U.S. 1252 (1991). However, a challenge to the enforceability of the underlying order upholding a settlement agreement, involving a legal challenge to the interpretation of the agreement, is reviewed de novo. Id.
 
 
 24
 JH Financial Group was an entity "with proposed or existing commercial relationships with the ACI receivership estate." Evans communicated with Herz of JH Financial Group by copying the Letter to him. Evans' argument that JH Financial Group had a proposed commercial relationship with ACI, but not with its receiver, is frivolous. Evans violated the plain words of the Stipulated Order.
 
 
 25
 Evans proposes that the parties' course of conduct excluded settlement negotiations from the order. He points to the hallway discussions leading up to the stipulation, to the meeting between the Investors and JH Financial Group later that day, and to exchanges in the weeks that followed. The district court rejected this interpretation, declaring that if settlement negotiations were to be excluded, the attorneys who drafted the order should have and would have expressly stated that exclusion in its terms. The Receiver stresses the representations of attorney Rayle, that they would not initiate any further extrajudicial communications without leave of court.
 
 
 26
 We need not reach the issue of whether the parties' course of conduct exempted settlement discussions. Even if we accept Evans' interpretation of the Stipulated Order, his spiteful, threatening letter was not a "settlement" communication. Its final line "mentioning" the withdrawal of the Investors' last settlement offer is insufficient to exempt the entire letter. Rather, the Letter was just the sort of interfering, harassing communication aimed at preventing the sale's closing that the Stipulated Order was intended to stop. The district court found the Letter was not a "settlement communication." That finding was not clearly erroneous. Evans violated the Stipulated Order.
 
 B. Issuance of OSC on court's own motion
 
 27
 Evans next contends that the district court had no jurisdiction to issue, sua sponte, an OSC re civil contempt.
 
 
 28
 Civil contempt is a remedy available only to a party in an action, not to the court itself. In Re Osborne, 344 F.2d 611, 616 (9th Cir.1965). However, a federal court presiding over an SEC receivership may justifiably resort, sua sponte, to civil contempt proceedings where the injunction was designed to protect persons who were not parties to the action and who were too numerous and too ill-informed to protect their own interests. See SEC v. American Bd. of Trade, Inc., 830 F.2d 431, 441 (2nd Cir.1987), cert. denied, 485 U.S. 938 (1988). The district court's obligation to protect the interests of the class is independent of the initiative or wishes of the class representatives in the proceeding. Id.
 
 
 29
 In the case at bench, the district court had a duty to act according to its perception of the interests of ACI's creditors and investors, regardless of the position of the Investors' representatives. Under the rule of American Bd. of Trade, the district court appropriately initiated civil contempt proceedings on its own motion, at the suggestion of the Receiver.
 
 C. Nature and purpose of the contempt
 
 30
 Evans contends that while he was only afforded the procedure due an alleged civil contemnor, the nature and purpose of the contempt was criminal. The first part of this argument relates back to the initiation of the contempt proceedings on the court's own motion, discussed above in Part B. A contempt charge commenced by the court on its motion is usually criminal. But, as explained, the receivership court itself rightly invoked civil contempt to protect creditor and investor classes.
 
 
 31
 Second, Evans argues that because the district court acted to vindicate its own authority, the contempt was criminal. If the purpose of a contempt is to punish past defiance, it is a criminal sanction requiring criminal safeguards including proof beyond a reasonable doubt. Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517 (9th Cir.1992). Civil sanctions, by contrast, are employed for two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained. Id. Although civil contempt may on occasion serve to vindicate the court's authority and criminal contempt occasionally benefit an adversary, these incidental effects do not affect the primary purpose of either type. Id. at 518.
 
 
 32
 Here, the district court only sanctioned Evans in the exact amount of the Receiver's losses, payable to the Receiver. The sanction was "compensatory" on its face. The sanction compensated for attorneys' fees and reasonable expenses incurred by the Receiver in the contempt hearing.
 
 
 33
 Further, the contempt proceedings can be seen also as assuring future compliance with the Stipulated Order so that further contumacious conduct by Evans, his firm, or the Investors themselves would not reoccur. The JH sale had not yet closed, and the district court most assuredly was concerned with preventing further efforts to derail the closing.[2]
 
 
 34
 We conclude that the contempt proceedings were primarily civil in nature and purpose.
 
 D. First Amendment
 
 35
 Evans contends that even if he violated the Stipulated Order, the order is void and cannot be enforced against him because it would violate his First Amendment right of communication.
 
 
 36
 The ordinary rule is that a party who has consented to an order and has not moved to set it aside, may not attack it on appeal. Harcourt Brace Jovanovich Legal and Professional Publications, Inc. v. Multistate Legal Studies, Inc., 26 F.3d 948, 953 (9th Cir.1994). However, for the court to enforce a waiver of a constitutional right in a consent order, the waiver must be knowing, intelligent, and voluntary. Davies, 930 F.2d at 1394. Additionally, the waiver of a constitutional right in a consent order must have a "close nexus" between a legitimate interest in the underlying dispute and the specific right waived. Id. at 1399.
 
 
 37
 In the case at bench, the district court had a legitimate interest in halting self-help and extrajudicial interference with the Receiver's efforts to sell the properties. It had properly entertained all of the Investors' objections, affording them all the due process required. The Investors failed to win a stay from the district court. The district court was entitled to enjoin interference with the administration of the receivership estate. See SEC v. Wencke, 622 F.2d 1363, 1369 (9th Cir.1980). We find there was a close nexus between the Receiver's interest and the specific constitutional right waived.
 
 
 38
 We also find that Evans' law partner knowingly and intelligently waived Evans' right to make the kind of communication he made. Thus, we hold that the First Amendment does not void the Stipulated Order, and that the order was enforceable against Evans.
 
 E. Privilege under California law
 
 39
 Evans contends that California law affords him an "absolute privilege" to communicate with third parties about the claims of his clients, the Investors, in real property.
 
 
 40
 Under California law, a privileged publication is one made:
 
 
 41
 (b) In any ... (2) judicial proceeding....
 
 
 42
 (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested....
 
 
 43
 Cal.Civ.Code § 47.
 
 
 44
 Applying this provision, Larmour v. Campanale, 96 Cal.App.3d 566 (1979), held that a demand letter seeking performance of a contract to purchase real property, and threatening a fraud suit, was privileged against a charge of libel. " 'It is ... well established legal practice to communicate promptly with a potential adversary, setting out the claims made upon him, urging settlement, and warning of the alternative of judicial action.' " Id. at 568 (citation omitted). The Larmour court reasoned that a copy of the allegedly libelous demand letter sent to an escrow company was privileged because
 
 
 45
 [a] lawsuit relating to the transaction would undoubtedly involve the escrow who held the buyers' $500 deposit. Keeping the escrow holder advised of legal developments in the transaction is not only proper to provide protection to the buyer but also to advise another "potential adversary" of the legal problems it too may face.
 
 
 46
 Id. at 568-69.
 
 
 47
 There are three reasons why Larmour and § 47 do not establish a privilege for Evans' communication in this case.
 
 
 48
 First, is Evans' waiver of the statutory right, discussed in Part D, above, in reference to the First Amendment. The "close nexus" standard for enforcement of a waiver of a constitutional right in Davies, 930 F.2d at 1399, was drawn from the Supreme Court's decision in Town of Newton v. Rumery, 480 U.S. 386 (1987). Rumery formulated the "close nexus" standard for waivers of a statutory right in consent orders. For the same reasons discussed in Part D, above, we conclude that Evans validly waived his privilege under § 47.
 
 
 49
 Second, JH Financial Group, under the terms of the Transfer Order entered May 10, 1995, is protected from suit by the investors. The Transfer Order's injunction against suit is a commonplace device to implement a judicial receiver's sale and to quiet the equitable title it conveys against challenge. See 2 Clark on Receivers § 487 (3rd ed. 1992). Here, all of the Investors' possibilities for vindicating their claims were legitimately confined to the sale confirmation process, the ongoing receivership proceedings, and appeals therefrom. Evans' threats in the Letter pertained to no court action his clients can now legitimately pursue. The facts of Larmour are thus distinguishable, because there the parties with whom the privileged party communicated were subject to a lawful suit. There was thus a sensible rationale, fully consistent with California law, in barring the communication at issue.
 
 
 50
 Third, we cannot read § 47 to conflict with Rule 2-100 of the Cal.Rules of Professional Conduct, which prohibits an attorney from communicating directly with a represented party in a litigated matter. Evans copied Greene's client, Hertz, with the Letter, against Greene's express wishes, and thus violated Rule 2-100.
 
 
 51
 No privilege under California law safeguarded Evans' right to write his letter.
 
 F. Public policy
 
 52
 Evans contends that the Stipulated Order should be voided as contrary to public policy for barring communications between opposing counsel in a court proceeding. This is an illusory issue in light of what actually happened in this case. Evans sent his letter directly to Greene's client, in violation of Rule 2-100.
 
 
 53
 Even if Evans had been cited for contempt merely for communicating with opposing counsel, the order restricting such communications would only be judged void on public policy grounds after performing the balancing test set out in Davies, 930 F.2d at 1397-98.
 
 
 54
 Certainly, as Evans contends, settlement discussions are in the public interest and should be encouraged, rather than barred. However, the vitriolic Letter was not intended to further settlement discussions, but rather to annoy and frighten the purchaser into abandoning a sale confirmed by the Court after many months of effort. We know of no public policy that encourages such conduct.
 
 
 55
 The Stipulated Order is not void as against public policy.
 
 CONCLUSION
 The district court's Contempt Order is
 
 56
 AFFIRMED.
 
 
 
 *
 The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In February 1995, this court denied the Investors' application for a stay pending appeal of these two orders
 
 
 [2]
 Remarks the district court made from the bench regarding its own authority were merely incidental to the civil purpose of the contempt proceeding